513 A.2d 437

**CRAIG COAL MINING COMPANY, Appellant,**

**v.**

**Frank ROMANI, a/k/a Francis Romani, Appellee.**

Superior Court of Pennsylvania.

Submitted May 1, 1986.

Filed July 23, 1986.

---

Stephen Israel, Pittsburgh, for appellant.

Marvin Schreiber, Pittsburgh, for appellee.

Before DEL SOLE, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

This appeal lies from an Order granting summary judgment.

Appellant, Craig Coal Mining Company, through its president, Robert Woods, contracted with appellee, Frank Romani, for the sale of a "4500 Manitowac Dragline", a piece of

machinery used in strip mining. The agreement was based on a mailgram offer of sale to appellee wherein time was made of the essence in performance of both buyer's and seller's obligations. The acceptance contained a date certain for the closing, at which appellant was to transfer clear title to the machine. This required delivery of a release of lien from the bank holding paper on appellant's equipment.

Four days prior to the closing, appellant, unknown to appellee, filed a petition for bankruptcy. Woods appeared at settlement without the necessary documents, appellee refused to pay for the dragline, and also for some other equipment ancillary to the dragline received by him prior to the bankruptcy. Appellant then instituted suit for breach of contract against appellee who in turn moved, successfully, for summary judgment. The judgment order was thereafter vacated as to the dragline attachments, and reinstated as to the dragline itself.

The issue presented is whether

bankruptcy provide[s] an automatic stay wherein performance of contractual obligations are forbidden until the court orders performance through the trustee or debtor-in-possession, at which time both parties to the contract must perform or be in breach.

Appellant's brief at V.

We first note the standard to be applied in assessing the propriety of a summary judgment.

When reviewing the grant of summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom. In order to uphold a grant of summary judgment, the record must demonstrate both an absence of genuine issues of material fact and an entitlement to judgment as a matter of law.

*Chicarella v. Passant,* 343 Pa.Super. 330, 340, 494 A.2d 1109, 1114 (1985) (citations omitted).

None of the facts, as summarized above, are in dispute. It is only appellant's assumptions as to the course of events dictated by the law which are now in question.

Appellant argues that the bankruptcy acted as a supervening factor, excusing its failure to timely perform by rendering such performance impossible. At the same time it is contended that all other obligations of the parties, particularly those of appellee, remained intact pending court decision on the matter, and resumption, by a trustee, of activity on appellant's behalf.

In support of this freeze frame approach, appellant cites 11 U.S.C.S. § 362[1] which provides, when a bankruptcy petition has been filed, for an automatic stay of proceed-

---

1. § 362. Automatic stay
   (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 USCS §§ 301, 302, 303], or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3) ) [15 USCS 78eee(a)(3) ], operates as a stay, applicable to all entities, of—
       (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title [11 USCS §§ 101 et seq.], or to recover a claim against the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.];
       (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title [11 USCS §§ 101 et seq.];
       (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
       (4) any act to create, perfect, or enforce any lien against property of the estate;
       (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.];
       (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.];
       (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title [11 USCS §§ 101 et seq.] against any claim against the debtor; and
       (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

ings, "including arbitration, license revocation, administrative, and judicial proceedings. Proceedings in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals." Comment to 11 U.S.C.S. § 362.

Subsection (a)(3), to which appellant specifically refers, prevents "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." When read in *pari materia* with the other sections of the statute, it becomes clear that this subsection does not encompass the execution of a previously formed compact, which cannot fall within the "proceedings" rubric of the Section as a whole.

Further, it is generally well settled that "insolvency or bankruptcy of a party does not operate to relieve him from the obligation to perform a contract." 17 Am Jur 2d *Contracts* § 415 (1964). *See also* J. Murray, *Murray on Contracts* § 180 (1074).

■ Bankruptcy, as a condition personal to the promisor and not inherent in the act to be performed, is considered subjective impossibility. 17 Am Jur 2d *Contracts* § 415 (1964). It is a question of "I can't do it", rather than, as appellant suggests, "It can't be done." *See generally B's Company Inc. v. B.P. Barber Assoc., Inc.*, 391 F.2d 130, 137 (4th Cir.1968).

The Restatement (Second) of Contracts, in Comment (e) section § 261,[2]

recognizes that if the performance remains practicable and it is merely beyond the party's capacity to render it, he is ordinarily not discharged, but it does not use the terms "objective" and "subjective" to express this. Instead, the rationale is that a party generally assumes the

**2.** § 261. Discharge by Supervening Impracticability

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

risk of his own inability to perform his duty. Even if a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party because this is also a risk that is commonly understood to be on the obligor.

The transfer of title under the contract here in question is conditioned upon appellant's acquisition of a release from the lienholder. However, under the provisions of the lien document termed the "Credit Facility", the buy back figure for the dragline was not broken out from the aggregate amount owed by appellant on its real estate and equipment. In addition, prepayment of the debt, wholly or in part, was specifically disallowed.

Appellant argues that his failure to deliver the release as promised became irrelevant in light of the bankruptcy. However, no attempt had been made to secure a written confirmation of the release prior to the filing of the petition, although the time limitation had been set by appellant's own offer. Therefore, appointment of the trustee, which did not occur until two (2) weeks subsequent to the termination date specified by the offer, solved nothing. The court will not remake a contract simply to comport with an appellant's somewhat cavalier attitude toward contractual responsibility, nor may one party ignore agreed upon terms with impunity.

> Manifestly, a plaintiff cannot prevail in an action for non-performance of a contract if he alone is responsible for the non-performance.

17 Am Jur 2d *Contracts* § 425 (1964). Appellant may not, in fact, take advantage of an insurmountable obstacle placed, by himself, in the path of the other party's adherence to an agreement. By preventing performance he also excuses it. *Pittsburgh Die Sinkers Lodge No. 50 of International Die Sinkers Conference v. Pittsburgh Forgings Co.*, 255 F.Supp. 142 (1966). *See also Hetkowski v. School District of Borough of Dickson City*, 141 Pa.Super. 526, 15 A.2d 470 (1940).

302

■ We find therefore that the lower court correctly decided upon appellee's entitlement to summary judgment with respect to the dragline itself, as a matter of law.

However, the court was divested of jurisdiction once the appeal was lodged, Pa.R.A.P. 1701, rendering it powerless to vacate any part of the original summary judgment order, and making any further orders nugatory. In order to rectify the procedural impasse this creates, we now vacate the portion of the summary judgment order affecting the dragline attachments, and remand for further proceedings on that matter alone.

Affirmed in part, vacated in part. Remanded for proceedings concerning the dragline attachments. Jurisdiction is relinquished.