In re Gerald G. SCOTT, Debtor.

Gerald G. SCOTT, Plaintiff,

v.

Patricia K. QUINN, Defendant.

Bankruptcy No. 86–01451 T.
Adv. No. 87–0609.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 24, 1988.

John Wetzel, Wessel & Carpel, Philadelphia, for debtor/plaintiff.

William R. Hagner, O'Donnell, Hagner & Williams, Paoli, for defendant.

Frederick L. Reigle, Reading, Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Plaintiff Gerald G. Scott ("debtor") has filed this Complaint for Declaratory Judg-

ment requesting that we declare that a certain stipulation remains in full force and effect, and that we order Patricia K. Quinn ("defendant") to vacate the premises pursuant to the terms of the stipulation. We find that the stipulation and a later Addendum thereto are indeed, in full force and effect, and we order that debtor convey the property to defendant.

Debtor and defendant were parties in a state court action centered on the question of whether debtor was bound to convey certain real property ("premises") to defendant pursuant to an Agreement of Sale. The Court of Common Pleas ordered debtor to convey, the Superior Court affirmed, and the case was pending in front of the Pennsylvania Supreme Court on March 27, 1986, the date on which debtor filed his chapter 13 petition.

Debtor filed a motion to reject the Agreement of Sale because it constituted an executory contract. At the hearing, the parties agreed that debtor would convey to defendant in exchange for $57,000.00. The parties also agreed that if the sale "for any reason whatsoever" was not completed "within 60 days from March 10, 1987," then the contract would be avoided. The stipulation was memorialized in a writing dated March 13, 1986, and signed by counsel for debtor and counsel for defendant. During the next few days the parties agreed that the title would be conveyed free and clear of liens and they proceeded to execute an Addendum. The parties agree that the Addendum is fully incorporated into the March 13, 1987 stipulation. Notes of Testimony ("N.T.") at 11, 31. Both counsel signed the Addendum in their representative capacities.

Two attorneys have represented debtor in these proceedings: John Wetzel, Esq. ("bankruptcy counsel") and Stephen P. Lagoy, Esq. ("real estate counsel"). Settlement was scheduled for May 8, 1987, and debtor and his real estate counsel arrived at 11:00 a.m. They were told that the settlement was postponed until 4:30 p.m., and that it would be a paper settlement only in light of a pending objection. N.T. at 4. Real estate counsel testified that "... because no settlement was going to take place, we did not come back at 4:30 that afternoon." N.T. at 4. Defendant's uncontroverted testimony shows that she was present on May 8th with the $57,000.00 purchase price.

After a conference call with all parties, we entered an order requiring that settlement be held no later than May 20, 1987.

Debtor and real estate counsel appeared on that date. N.T. at 6. The clerk present indicated that there were insufficient funds to clear various liens and to pay transfer taxes. N.T. at 6. Defendant's counsel tried to clear the liens, but suggests that we were unable to determine the payoff on a lien held by Malvern Federal Savings & Loan ("Malvern lien") because debtor would not cooperate. N.T. at 39, 23, 24. Debtor offered to convey subject to the lien. N.T. at 8. Defendant requested that debtor pay the transfer taxes and settlement expenses. N.T. at 6. Again, it is not disputed that defendant was present with the requisite $57,000.00. N.T. at 55. Settlement did not occur.

Debtor now advances three arguments in support of his complaint: 1) defendant did not comply with the stipulation because she should have accepted the deed subject to the lien of Malvern; 2) the Agreement of sale should be avoided since the sale did not occur with the 60 day period set forth in the stipulation therein; and 3) debtor should not be bound by the stipulation because his counsel lacked authority to sign the Addendum.

▇ Debtor's first argument falls easily. The Addendum clearly provides that the title conveyed was to be free and clear of liens. There is no rational basis upon which we could require defendant to take title subject to the Malvern lien.

Although not clearly identified by either party, debtor's second argument raises issues of contractual construction. Specifically, a party who prevents performance also excuses performance. *Craig Coal Min. Co. v. Romani*, 355 Pa.Super. 296, 513 A.2d 437, 440 (1986), appeal granted, 514 Pa. 624, 522 A.2d 50 (1987) (No requirement that buyer actually make the purchase when seller's bankruptcy petition prevented it from conveying clear title on a certain date). *See also, Hunts Point Tomato Co., Inc. v. Roman Crest Fruit, Inc. (In re Roman Crest Fruit, Inc.)*, 35 B.R. 939, 946, Bankr.L.Dec. para. 69,569 (Bankr. S.D.N.Y.1983) ("when a contractual duty is conditional, good faith and fair dealing require the promisor reasonably to cooperate by either refraining from conduct which would prevent or hinder the occurrence of the condition, or by taking positive action to cause its occurrence"); *Vecco Const. Ind., Inc. v. Century Const. Co. (In re Vecco Const. Ind., Inc.)* 30 B.R. 945, 949, amended 33 B.R. 757 (Bankr.E.D.Va.1983). This concept is called the prevention doctrine, and its purpose is to prevent a party

from benefiting when its wrongful acts prevent performance required by the other party. *Seattle Totems Hockey Club, Inc. v. Ntl. Hockey League*, 783 F.2d 1347 (9th Cir.1986), *cert. den.*, —— U.S. ——, 107 S.Ct. 405, 93 L.Ed.2d 357.

We find that debtor's antics at the two settlements prevented defendant from performing. Simply stated, defendant was not given the chance to settle. On May 8th, debtor and counsel failed to reappear at 4:30 based on their untenable excuse that a paper settlement would not be a settlement. N.T. at 9.

On May 20th, debtor prevented performance by insisting the defendant take title subject to the Malvern lien. The Addendum clearly indicates that debtor was required to provide title free and clear. Debtor offers testimony suggesting that his real estate counsel was unaware of the Malvern lien and thus could not have been present at the settlement table with cash sufficient to pay off that lien. N.T. at 5, 35. It is clear, however, that debtor's bankruptcy counsel knew about the Malvern lien and the other outstanding obligations. N.T. at 46, 47, 49. There is evidence to suggest that bankruptcy counsel kept real estate counsel aware of the status of the negotiations in the case. N.T. at 14 (copy of letter). Further, real estate counsel was in court when the parties reached the initial stipulation. N.T. at 9–10. He also participated in a conference call between the parties and this court. N.T. at 14, Defendant's Exh. # 1. Under the circumstances, we cannot believe that real estate counsel was unaware of the requirement that title pass free and clear. Even if he were unaware, we must remember that we sit as a court of equity. We will not allow bankruptcy counsel, who clearly should have communicated this information, to use that lack of communication to excuse the fact that they effectively prevented settlement. Counsel had more

than a duty not to prevent settlement; they should have taken any necessary, affirmative steps to cause its occurrence. *In re Vecco Const. Ind., Inc.*, 30 B.R. 945, 949.

Defendant was ready and willing to pay the purchase price on both of the settlement dates. The sixty day performance period lapsed only because debtor prevented performance.

Finally, debtor argues that he is not bound by the terms of the stipulation because he did not authorize counsel to sign the Addendum. The burden of proving that an attorney had no authority to act is upon the party challenging that authority—in this case, the debtor. *In re Record Club of America*, 28 B.R. 996, 999 (Bankr. M.D.Pa.1983), *citing, Osborn v. Bank of the United States*, 22 [9 Wheat.] U.S. 738, 6 L.Ed. 204 (1824). *See also, Terrain Ent., Inc. v. Western Cas. and Sur. Co.*, 774 F.2d 1320, *reh. den.* 778 F.2d 790 (5th Cir.), *cert. den.*, 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1985). The appearance of an attorney in federal court creates a presumption that the attorney has authority to act; the party disclaiming that authority has a heavy burden. *Harewood v. Sarah Allen Home, Inc. (In re Sarah Allen Home Inc.)*, 7 B.R. 732, 734 & n. 6 (Bankr. E.D.Pa.1980).

In the instant case, debtor has presented no evidence limiting the scope of bankruptcy counsel's authority, and thus it is impossible for us to determine that he lacked authority to sign this particular document. Counsel testified that he wasn't aware that Malvern had a lien and he signed the Addendum without discussing it with his client. N.T. at 41. We do not think that the decision to sign the Addendum was beyond the scope of his authority. *See generally*, RESTATEMENT (SECOND) OF AGENCY § 34 (1958).[1] Rather, the signing of the Addendum was part of the incidental authority included in counsel's au-

---

1. This section enumerates several factors that must be taken into account when interpreting the scope of authority:

§ 34. Circumstances Considered In Interpreting Authority

An authorization is interpreted in light of all accompanying circumstances, including among other matters:

(a) the situation of the parties, their relations to one another, and the business in which they are engaged;

(b) the general usage of business, the usages of trades or employments of the kind to which the authorization relates, and the business methods of the principal;

(c) facts of which the agent has notice respecting the objects which the principal desires to accomplish;

(d) the nature of the subject matter, the circumstances under which the act is to be performed and the legality or illegality of the act; and

(e) the formality or informality, and the care, or lack of it, with which an instrument evidencing the authority is drawn.

Although counsel does not act under seal, we think that these factors suggest that an attorney who has had authority to sign off on certain conditions of sale would have (at least) apparent authority to assert additional conditions.

thority to negotiate the stipulation. *See generally,* RESTATEMENT (SECOND) OF AGENCY § 35.

We are aware that our holding in this case may appear to penalize debtor for the oversight of his counsel.[2] For example, the Third Circuit has stated that dismissal is a sanction of last resort that should be avoided when it will penalize an innocent third party for his counsel's dereliction of duty. *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 869 (3d Cir.1984). But there are competing considerations. By freely overlooking this type of attorney error and oversight, we create an environment in which this oversight will become a common excuse and defense. As the Seventh Circuit explained

> It would be a free good-the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either.

*Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986).

In denying debtor's request we are not abandoning the admonishment of *Poulis,* since *Poulis* merely suggests that we proceed with extreme caution. Instead, we are carrying to its logical extreme the principal that each party is bound by the acts of his lawyer/agent and will be treated as having notice of any facts of which his attorney has notice. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962), *reh. den.* 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962).

An appropriate order follows.

---

**2.** Although debtor testified that he had not seen the Addendum until the December 1987 hearing in this matter, we are leery of the conclusion that debtor was an innocent bystander. We suspect that debtor should have known, as early as the May 20th settlement, that defendant felt she was entitled to title free and clear. Oral examination did not elicit the extent of debtor's knowledge, however. Since it is quite possible, therefore, that debtor ratified the Addendum by his silence subsequent to May 20th, we do not view our decision as placing undue responsibility upon debtor.