614 A.2d 771

**Barbara Greenblatt LUBER**

v.

**I. Michael LUBER, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 26, 1992.

Filed Oct. 8, 1992.

Robert A. Selig, West Conshohocken, for appellant.
Neil Hurowitz, King of Prussia, for appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge.

In this appeal, we are asked to determine whether the terms of an agreement orally placed on the record before a Master may be enforced as a binding marital settlement between parties in a divorce action. Here, I. Michael Luber (Husband) appeals from an order which granted Barbara Greenblatt Luber's (Wife) Petition for Order to Comply with Terms of Agreed Settlement and also awarded her counsel fees and costs. We affirm.

The parties were married on June 17, 1967 and separated on September 5, 1986. Wife filed for divorce in 1987. On August 30, 1990, a hearing was scheduled before a Master on the economic issues raised in the divorce proceedings. The formal hearing did not take place, but, after several hours of negotiations, the terms of a settlement agreement were set forth on the record before the Master. Following the parties' oral recitation of the settlement terms, both Husband and Wife were questioned by the Master and both indicated their understanding and agreement to the settlement terms. The Master indicated that, following the parties placing their settlement agreement on the record, a document reflecting that agreement would be drafted by counsel.

On October 31, 1990, Wife filed a Petition for Order to Comply with Terms of Agreed Settlement. Following a hearing, the trial court granted the petition and awarded counsel fees and costs to Wife. Husband appealed from that order. Upon Wife's motion, the appeal was quashed. The final decree in divorce was then entered on August 6, 1991. Thereafter, Husband filed a Petition for Reconsideration, which was granted on August 22, 1991 and the appeal was reinstated.

At oral argument on August 26, 1992, counsel for Wife sought to renew his argument that the appeal by Husband should be quashed. The record reflects that a motion to quash the appeal had been granted on August 2, 1991. This court granted a motion for reconsideration on August 22, 1991. Thereafter, on February 19, 1992, following review by the

entire court, the full court denied a later-filed second motion to quash the appeal. On April 29, 1992, this court amended its Internal Operating Procedures to provide that:

**302. Motions Review Subject to Full Court Disposition.**

**H.** Unless otherwise provided, an order entered pursuant to this Rule which denies a motion to quash or dismiss an appeal. . . . shall be deemed to be the law of the case.

Because of the applicability of amended Rule 302. H, we are prohibited from further considering whether the within appeal was untimely filed where notice of such appeal was brought prior to the entry of a final decree in divorce. *See Campbell v. Campbell,* 357 Pa.Super. 483, 516 A.2d 363 (1986), *appeal denied,* 515 Pa. 598, 528 A.2d 955 (1987).

We will now address the substantive issues presented in this appeal. Husband alleges that the trial court erred in granting Wife's petition to enforce the property settlement agreement. We disagree.

Husband first argues that "the on-the-record colloquy of August 30, 1990, does not constitute an omnibus property settlement agreement with sufficient terms and conditions so as to constitute an enforceable contract." A property settlement agreement is enforceable by utilizing the same rules of law used in determining the validity of contracts. *Lipschutz v. Lipschutz,* 391 Pa.Super. 537, 571 A.2d 1046 (1990). It is established law in this Commonwealth that parties may bind themselves contractually prior to the execution of a written document through mutual manifestations of assent, even where a later formal document is contemplated. *Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Super. 56, 563 A.2d 1182 (1989), *appeal denied,* 524 Pa. 629, 574 A.2d 70 (1989). The intent of the parties to be bound is a question of fact which must be determined by the factfinder. *Johnston v. Johnston,* 346 Pa.Super. 427, 499 A.2d 1074 (1985). A reviewing court must defer to the findings of the trier of the facts if they are supported by the evidence. *Compu Forms Control, Inc. v. Altus Group, Inc.,* 393 Pa.Super. 294, 574 A.2d 618 (1990).

 Husband maintains that the terms placed on the record before the Master were merely proposals and concepts for a future contract and that there was no agreement as to all terms that were to be included in the marital settlement agreement. Brief for Appellant at 10, 12. The record in this case fails to support Husband's contentions. After the parties had placed all the terms of the agreement on the record, the Master engaged in a colloquy of the parties. Following Wife's agreement to all terms of the agreement, the following exchange took place between the Master and Husband:

THE MASTER: You, too, Mr. Luber, have been in the Courtroom while this colloquy and this discussion, this detailing of the terms of the agreement have been put on the record. And have you heard everything that has been said?

MR. LUBER: Yes.

THE MASTER: And did you understand it?

MR. LUBER: Yes, I did.

THE MASTER: And do those words that have been expressed correctly reflect your understanding of the agreement and you will support that?

MR. LUBER: Yes.

N.T., August 30, 1990 at 12–13.

Because both Husband and Wife, upon questioning by the Master, stated that they understood the terms of the agreement and gave their unqualified assent to the agreement, we conclude that the record supports the trial court's finding that both parties "understood and consented to the Agreement put on the record before the Master on August 30, 1990."

 Husband further asserts that, because the parties contemplated the addition of "boiler-plate" language at the time of drafting, the oral agreement was incomplete and, therefore, unenforceable at the time it was placed on the record before the Master. We disagree. As long as the oral agreement contained the essential terms of the marital settlement, it could be enforced, despite the fact that additional terms were to be added to embellish the agreement when it

was reduced to writing. *Id.; Johnston, supra.* Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement. *Kazanjian v. New England Petroleum Corporation,* 332 Pa.Super. 1, 480 A.2d 1153 (1984).

At no time did either party or counsel indicate that the terms placed on the record, before the Master, were other than the essential terms envisioned for the marital settlement agreement between the parties. Even at the time of this appeal, Husband merely argues that there must be a "meeting of the minds" on the "boiler-plate" language to be added to the written contract. However, Husband fails to assert that this contemplated language would be essential to the contract or would in any way alter the existing agreement between the parties. The record supports the trial court's finding that "[t]he agreement placed on the record and the colloquies following thereafter clearly show that the parties agreed upon the essential terms of the Settlement Agreement, [and] intended them to be binding between them...." Trial court opinion at 9. We, therefore, will not disturb this finding on appeal.

■ Husband next contends that even if there were a valid agreement existing between the parties, his performance should be excused due to legal impossibility. Husband maintains that he is unable to obtain the necessary financing to meet the obligations of the marital settlement agreement and, as such, his obligations under the contract should be excused. We find this argument to be meritless. Legal impossibility or impracticability is defined in § 261 of the Restatement (Second) of Contracts. *See Craig Coal Mining Co. v. Romani,* 355 Pa.Super. 296, 513 A.2d 437 (1986), *appeal granted,* 514 Pa. 624, 522 A.2d 50 (1987). This section states:

§ 261. **Discharge by Supervening Impracticability**

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that

performance is discharged, unless the language or the circumstances indicate to the contrary.

Husband maintains that his inability to obtain the necessary financing renders it impossible for him to perform his obligations under the marital settlement agreement. Husband's assertions betray a misunderstanding of the concept of legal impossibility or impracticability. Comment b to § 261 indicates that in order for a discharge to occur under this theory there must be the occurrence of a supervening event, the nonoccurrence of which was a basic assumption on which both parties based their contractual agreement. Comment b to § 261 also states that the financial inability of one of the parties to complete obligations under the contract will not effect a discharge under this Section. The theory of legal impossibility or impracticability is based on an objective standard and will not apply if a performance remains practicable and is merely beyond a particular party's capacity to render it. § 261 of the Restatement (Second) of Contracts, comment e; *Dorn v. Stanhope Steel, Inc.*, 368 Pa.Super. 557, 534 A.2d 798 (1987), *appeal denied*, 518 Pa. 656, 544 A.2d 1342 (1988). In order to prevail under the theory of legal impracticability, Husband must establish that the act contemplated under the contract, payment of the cash settlement, is incapable of being performed, rather than the fact he is incapable of performing it. *Craig Coal*, at 300, 513 A.2d at 439.

Here, Husband does not assert that performance itself under the present contract is impossible but merely states that, due to other financial obligations, he is unable to perform. Husband provides us with no authority under which his assertion of financial inability to perform, without more, would constitute a basis for discharging his duties under the present contract, nor has our independent research revealed any. Under the existing law of this Commonwealth, a party generally assumes the risk of his own inability to perform his contractual duties. *Dorn*, at 588, 534 A.2d at 813; Restatement (Second) of Contracts § 261, comment e. As Husband's assertion merely indicates a personal inability to perform his duties under the contract, it does not rise to the level of legal

impossibility or impracticability. We, therefore, are unable to grant the relief Husband requests under this theory.

Finally, Husband asserts that the trial court erred in failing to order both parties to comply with the terms of the marital settlement agreement. This argument is specious. There have been no allegations by Husband at any time during this proceeding that Wife was unwilling or unable to comply with the terms of the agreement. As Husband, alone, was the party who refused to comply with the terms of the settlement agreement, it was appropriate for the trial court, after finding that a valid agreement existed, to order such compliance. After giving this claim due consideration, we dismiss it as meritless.

Accordingly, for the foregoing reasons, we affirm the order of the trial court.

Order Affirmed.