**Kalnas v. Kalnas**

*William R. Bishop Jr.,* for plaintiff.
*Angelo A. Papa,* for defendant.

DOERR, *P.J.,* December 11, 2006—Presently before this court are defendant Andrew Joseph Kalnas' petition to open or set aside marital settlement agreement, petition to lift stay and adjudicated contempt filed by plaintiff Suzanne Renee Kalnas.

## BRIEF FACTUAL BACKGROUND

This case has an unusually lengthy, complex and contentious history.[1] We give a case summary to provide the proper context within which to evaluate the issues before this court. Susan Renee Kalnas (Wife) and Andrew Jo-

---

1. The court takes judicial notice of all prior family court orders and agreements pertaining to and referenced to in the above-captioned matter.

338

seph Kalnas (Husband) were divorced on May 2, 1996. At that time, the parties entered into a non-modifiable marriage settlement agreement, which provided, inter alia, the payment of alimony and child support for Wife as follows:

| June 1, 1998 through December 31, 2001 | $10,000 per month |
| January 1, 2002 through May 31, 2010 | $9,000 per month |
| June 1, 2010 through December 31, 2010 | $7,000 per month |
| January 1, 2011 through February 28, 2013 | $6,000 per month |

In 2000, Husband experienced financial difficulties and was unable to make the requisite payments, which resulted in Wife initiating numerous contempt proceedings. Husband's support payments were ultimately reduced. On June 12, 2003, Husband filed a motion to set aside or open the non-modifiable marital agreement, and we heard argument on September 8, 2003. The parties were instructed to file briefs on the matter. On November 4, 2003, prior to our ruling, the Domestic Relations Office filed a petition for contempt against Husband alleging his arrearages exceeded $279,000. On December 17, 2003, Husband filed a motion to continue and consolidate the contempt hearing, as discovery was incomplete.

On that same day, we granted Husband's motion and the hearing was continued until February 10, 2004. On December 19, 2003, Wife filed an emergency motion for reconsideration, as well as an answer to Husband's motion to continue and consolidate the contempt hearing.

On December 30, 2003, we denied the motion as we found, based on a review of the record, Husband was making payments consistent with his earning capacity. (See order of court 12/30/03.)

In the interim, Husband filed a modification petition for support on January 6, 2004. This matter was continued generally by order of court dated February 3, 2004 as Wife filed an appeal, which Superior Court quashed as interlocutory in an unpublished opinion dated December 30, 2004, slip op., docketed at WDA no. 53 2004. A hearing on the matter was then scheduled for September 9, 2005 and a subsequent hearing scheduled on January 13, 2006 to complete testimony. Following the completion of testimony, we advised the parties that the issue of whether the agreement could be opened, set aside or modified must be decided prior to reaching the contempt issue.

## LEGAL STANDARD

In Pennsylvania, a settlement agreement between a Husband and Wife is governed by the law of contracts unless the agreement states otherwise. *Stamerro v. Stamerro,* 889 A.2d 1251 (Pa. Super. 2005). In order for a contract to be valid, there must be mutual assent of the contracting parties. *Degenhardt v. Dillon Co.,* 543 Pa. 146, 669 A.2d 946 (1996). Established Pennsylvania law states: When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When agreements containing clear and un-

ambiguous terms, as here, where the contract is written, the intent of the parties is determined from the writing itself. *Id;* see also, *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159 (2004).

Additionally, where the language is clear and unambiguous, the intent of the parties "is to be determined *only* from the express language of the agreement." *Litwack v. Litwack,* 289 Pa. Super. 405, 408, 433 A.2d 514, 515 (1981). (emphasis added) The court will not, without fraud, mistake or overreaching, redraft a contract to be more beneficial to a party than the agreement, which they chose to enter. *Stamerro, supra.*

## DISCUSSION

With the foregoing principles in mind, we turn to the agreement that is the initial focus of the parties' dispute in this case.[2] Husband argues that unforeseen circumstances now make it impossible for him to perform and warrant a modification of the agreement. He argues additionally, as grounds for modification or as grounds to set aside the agreement, past and current fraud on the part of Wife. We address each argument seriatim, beginning with whether the agreement lends itself to modification, contains language or conditions permitting it to be opened or set aside.

---

2. Herein, both parties have raised the arbitration provisions of the agreement concerning default by either party. However, we note the issue before the court is not default by either party, but rather whether the agreement is subject to modification or whether it is unenforceable due to impracticability, fraud or impossibility of performance. Therefore, we find the threshold issue is one properly before this court and not subject to an interpretation by the arbitrator.

In article XVIII of the agreement, the parties stated that the entire agreement is non-modifiable. See exhibit 5, article XVIII Modification. Thus, the parties expressly included language precluding modification. For guidance in interpreting expressions in which the parties depend upon, and must be considered in, we look to the context in which they were manifested. See Murray on Contacts, 3d ed., §88A at 421.

If a court seeks to determine the meaning attributed by the parties to their expressions of agreement, it is important for the court to place itself in the position of the parties at the time of contract formation. It must take into account all of the surrounding circumstances prior to, and contemporaneous with, the making of the contract so as to more precisely identify the sense of the expressions in question as apparently understood by the parties. *Id.,* section 88A. (footnotes omitted)

In the instant matter, at the time of execution of the agreement, both parties had the benefit of counsel. Mark J. Goldberg, Esquire and Kerri Lee Cappella, Esquire represented Husband. Her current counsel, William R. Bishop, Esquire, represented Wife. The pertinent language provides: "[e]ach party fully understands the facts and each party acknowledges and accepts that this final property settlement agreement, is under the circumstances, fair, just and equitable, and that it is being entered into *freely and voluntarily after having received such legal advice and with such knowledge as he or she chooses to obtain, and that the execution of this final property settlement agreement is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agree-*

342

*ments."* (emphasis added) Both parties executed provisions waiving their respective rights to have the Court of Common Pleas of Butler County, Pennsylvania or any other court of competent jurisdiction make determinations regarding support. See exhibit 5, article III, Legal Advice.

Husband's obligation to pay current and future maintenance was set forth in terms of specific amounts and duration. It is also clear that parties agreed that maintenance shall not be modified or terminated except upon certain specified conditions. When the parties so agree, maintenance may be modified or terminated only under the circumstances specified in the agreement. The purpose of allowing parties to agree in advance to the circumstances under which maintenance may be modified or terminated is to permit them to plan for the future by eliminating concerns based upon subsequent motions to increase or decrease their obligations, such as what has transpired in the case sub judice.

In article VIII, the terms under which support would be modified downward occurs in the event of Wife's remarriage or cohabitation. This did not occur nor is it alleged. Further, alimony would terminate upon the death of Husband, which is inapplicable here. After a thorough review of the transcripts in this matter, as well as considering all testimony presented at the hearings, I find there is no ambiguity in this language, and it is sufficient to express the parties' intention that the maintenance provisions of the agreement are not to be modified.

Husband next contends that, even if there were a valid agreement existing between the parties, his performance should be excused due to legal impossibility. Hus-

band maintains that he is unable to obtain the necessary financing to meet the obligations of the marital settlement agreement and, as such, his obligations under the contract should be excused. We find this argument to be meritless. Legal impossibility or impracticability is defined in section 261 of the Restatement (Second) of Contracts. See *Luber v. Luber,* 418 Pa. Super. 542, 614 A.2d 771 (1992). This section states:

"Section 261. Discharge by supervening impracticability

"Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate to the contrary.

"Husband maintains that his inability to earn his past income due to the failure of his business renders it impossible for him to perform his obligations under the marital settlement agreement. Husband's assertions betray a misunderstanding of the concept of legal impossibility or impracticability. Comment b to section 261 indicates that in order for a discharge to occur under this theory there must be the occurrence of a supervening event, the non-occurrence of which was a basic assumption on which both parties based their contractual agreement. Comment b to section 261 also states that the financial inability of one of the parties to complete obligations under the contract will not effect a discharge under this section. The theory of legal impossibility or impracticability is based on an objective standard and will not apply if a performance remains

practicable and is merely beyond a particular party's capacity to render it. Section 261 of the Restatement (Second) of Contracts, comment e; *Dorn v. Stanhope Steel Inc.,* 368 Pa. Super. 557, 534 A.2d 798 (1987), *appeal denied,* 518 Pa. 656, 544 A.2d 1342 (1988). In order to prevail under the theory of legal impracticability, Husband must establish that the act contemplated under the contract, [the ability to *ever* earn his former income,] is incapable of being performed, rather than the fact he is incapable of performing it." *Luber,* at 548-49, 614 A.2d at 774.

Therefore, based upon the foregoing, we conclude Husband's allegations of diminished financial circumstances did not warrant modification of his support obligation under the parties' agreement. Husband is bound by his contract.

Turning to the second argument of fraud in the execution of the contract, we note this "Commonwealth has accepted the principle in Restatement (Second) of Contracts §205 that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *John B. Conomos Inc., v. Sun Company Inc. (R & M),* 831 A.2d 696, 705-706 (Pa. Super. 2003), *appeal denied,* 577 Pa. 697, 845 A.2d 818 (2004). (citation omitted) "The duty of 'good faith' has been defined as '[h]onesty in fact in the conduct or transaction concerned.'" *Somers v. Somers,* 418 Pa. Super. 131, 136, 613 A.2d 1211, 1213 (1992). (citation omitted)

"The obligation to act in good faith in the performance of contractual duties varies somewhat with the context, . . . and a complete catalogue of types of bad faith is

impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* (internal citations omitted) As stated *supra,* Husband alleges fraudulent conduct on the part of Wife as grounds to set aside the agreement. Specifically, Husband avers Wife failed to disclose a meretricious relationship with her attorney and principal debtor resulting in an asset he referred to as "free legal advice." (N.T. 9/9/05; 1/13/06.)[3] To prove fraud, a plaintiff must demonstrate by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Unsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence of fraud. *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa. Super. 2002), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003).

Viewing the evidence in the light most favorable to Husband, the statements concerning the meretricious relationship do plant the seeds of a fraudulent misrepresentation. If the allegations are true, it taxes credulity to assume that the debt in question is in fact truly outstanding. Misrepresentations made under such cir-

---

3. N.T. refers to notes of testimony, hearing January 13, 2006.

cumstances are fraudulent. *Germantown Manufacturing Company v. Rawlinson,* 341 Pa. Super. 42, 491 A.2d 138 (1985). In this situation, Husband's situation involves or implies a situation where the maker expressly or impliedly suggests that the statement is based on something more than mere opinion. We remain cognizant that counsel for Wife remains her principal debtor. Further, Husband never testified that, but for the misrepresentation, he would not have entered into the contract. Therefore, without more, we are constrained to find this allegation fails to support a finding of fraud in the inducement of the contract.

We now address the issue of contempt. We find Husband's failure to abide by the agreement was not willful. A careful review of the record and testimony heard by this court during the numerous hearings in this matter reveals Husband's failure to comply with his support obligations under the agreement was due to his financial inability. We find he is current to the best of his ability under the circumstances. It is uncontested that Husband's business experienced a catastrophic downturn. Contempt arises from a willful disobedience of a court order. *Gunther v. Bolus,* 853 A.2d 1014, 1017 (Pa. Super. 2004). A willful act is defined as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done." *Id.* Where a contemnor is unable, without fault on his part, to obey an order of the court, he is not to be held in contempt. Herein, we find Husband continues to fulfill his support obligations to the extent he is financially able, consistent with his earning capacity. Thus, we hold the facts and circum-

stances of this case do not warrant a finding of contempt.

Accordingly, we enter the following:

## ORDER

And now, December 11, 2006, upon consideration of the within petition to open or set aside marital settlement agreement filed by defendant Andrew Joseph Kalnas, the respective responses in opposition, the memoranda of law in support and in opposition, all matters of record, and in accord with the opinion issued contemporaneously, it is hereby ordered, adjudged and decreed that said motion is denied.

It is further ordered that based upon a review of the Butler County Domestic Relations records, the parties' responses in opposition, the memoranda of law in support and in opposition and consistent with the opinion filed contemporaneously with this order, this court finds that defendant has made payments consistent with his earning capacity.

The petition to lift stay and adjudicate contempt filed by plaintiff is denied.