J-A13011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PR FINANCING LIMITED PARTNERSHIP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PAUL ELIAS T/A YUM-YUM TASTY DONUTS | |
| Appellee | No. 1446 WDA 2014 |

Appeal from the Judgment Entered September 26, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 3070 of 2007 GD

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                    FILED:  AUGUST 20, 2015

Appellant, PR Financing Limited Partnership ("PR"), appeals from the judgment entered after the trial court found that Appellee, Paul Elias, trading as Yum-Yum Tasty Donuts, had breached his lease with PR, but concluded that the accelerated rent provisions of the lease were unconscionable.  We affirm in part, and reverse and vacate in part.

The factual findings of the trial court are largely undisputed, for purposes of this appeal, regarding the period of time prior to the morning of January 1, 2006.  In 1984, a predecessor in interest of Elias leased the subject premises from a predecessor in interest of PR.  The lease was for a term of 25 years, ending on January 31, 2011.  In 1990, the lease was

assigned to Elias, after he had unsuccessfully sought to modify the provisions of the lease to allow him to terminate the lease after 5 years.

In 1999, Elias desired to invest in improvements to the leased property, and therefore requested a 10-year extension of the lease term to justify the investment. Once again, Elias unsuccessfully sought a modification of the lease to allow him to terminate after 5 years, and ultimately agreed to the 10-year extension of the term with all other provisions remaining intact. Elias proceeded to finance extensive improvements to the property.

On December 21, 2005, Elias requested a copy of the lease from PR. PR provided a copy of the lease to Elias on December 23, which provided for an increase in annual rent from $28,000 to $30,000, starting on February 1, 2006. At this time, Elias was several months behind in his rental payments to PR.

In the morning of January 1, 2006, a fire caused by arson destroyed the premises of Yum-Yum Tasty Donuts. The building and the equipment inside were determined to be a total loss, and Elias received a full payout from his property insurance policy, totaling $445,753.96, by May 4, 2006. After reviewing several proposals to rebuild and re-outfit the premises, Elias concluded that he could not pay the rent due while at the same time re-building the premises. Instead, Elias used the insurance policy proceeds to

pay off debts, including debts owed to family members, as well as loaning $105,411.81 to his wife's business in 2006 and $197,500 in 2009.

Elias stopped making rent payments to PR in September 2006. In November 2007, PR filed a complaint against Elias, asserting a cause of action in breach of contract based upon Elias's failure to pay rent and failure to rebuild the premises as required by the lease. In particular, PR sought accelerated damages in an amount equal to the rent due for the remaining 15 years of the lease term. Elias filed an answer asserting defenses of impossibility, Act of God, and failure to mitigate damages.

After extensive discovery, the parties proceeded to a non-jury trial in December 2012. The trial court found Elias to be in breach of the lease, but found that Elias was not required to rebuild the premises. Furthermore, the trial court found that accelerated rent provisions of the lease constituted an unconscionable contract of adhesion, and therefore only awarded damages based upon unpaid rent prior to December 2007. After the denial of PR's post-trial motions and the entry of judgment, this timely appeal followed.

On appeal, PR raises four issues for our review. The first two issues concern the trial court's limitation of damages, the third attacks the trial court's finding that the accelerated rent provision was unconscionable, and the fourth and final issue challenges the trial court's treatment of Elias's defenses of financial impossibility and *vis major*. We will address these issues in sequence.

We begin with our standard of review.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue … concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation and brackets omitted).

First, PR contends that the trial court erred in concluding that Elias had no duty to rebuild the premises under the lease. A "lease is in the nature of a contract and is controlled by principles of contract law." *Willison v. Consolidation Coal Co.*, 637 A.2d 979, 982 (Pa. 1994) (citation omitted). Interpretation of a contract poses a question of law and our review is plenary. *See Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id*. (citation omitted).

To give effect to the intent of the parties, we must start with the language used by the parties in the written contract. *See Szymanski v.*

***Brace***, 987 A.2d 717, 722 (Pa. Super. 2009). Generally, courts will not imply a contract that differs from the one to which the parties explicitly consented. ***See Kmart of Pennsylvania, L.P. v. M.D. Mall Associates, LLC***, 959 A.2d 939, 944 (Pa. Super. 2008). We are not to assume that the language of the contract was chosen carelessly or in ignorance of its meaning. ***See id***.

Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. ***See Prudential Property and Casualty Ins. Co. v. Sartno***, 903 A.2d 1170, 1174 (Pa. 2006). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." ***Hutchison v. Sunbeam Coal Co.,*** 519 A.2d 385, 390 (Pa. 1986) (citations omitted).

At issue in this matter is a specific provision of the lease addressing fire damage to the leasehold during the term of the lease. The provision provides as follows.

> (a)   If the demised premises shall be damaged or destroyed by fire or other casualty, Tenant shall promptly commence the repair of the demised premises to the condition which existed prior to such damage. There will be no abatement of rentals due hereunder and no cancellation of this Lease Agreement during the period such repairs are being made by Tenant.

> (b)   Tenant covenants and agrees that Tenant's mortgage of the improvements to be erected upon the demised premises shall provide that any proceeds of insurance policies paid for the destruction, in whole or in part, by fire or other cause, of the improvements shall be made available for repair of the premises.

(c)    Notwithstanding anything contained herein, if a substantial loss or destruction to the improvements to be erected upon the demised premises shall occur within the last two years of the original term, or during any renewal term, Tenant may, at is option, terminate this Lease as of the date of such occurrence by written notice mailed to Landlord within ten (10) days after such occurrence and direct all insurance proceeds to Landlord as consideration for such termination.  At such time, the rights of the parties under this Lease shall cease, rent shall be apportioned, and Landlord and Tenant shall be released from any further liability hereunder.

Lease, § 16.01(a)-(c).

Elias argued, and the trial court agreed, that the term "repair" in section 16.01(a) was ambiguous as to whether it required Elias to completely rebuild the premises in the event of a total loss.  *See* Trial Court Opinion, 12/31/13, at 6.  As a result, it construed the term against PR as the successor in interest to the drafting party, and concluded that section 16.01 did not require Elias to rebuild the premises in the event of a total loss.  *See id*.

Read in *isolation*, the trial court's conclusion is plausible.  But when read in the context of the *entirety* of the section, as we must, it is clear that "repair" includes a complete rebuild in the event of a total loss.  Section 16.01(a) begins with the statement that in the event the premises are "damaged or *destroyed* by fire," the tenant was required to repair the premises.  Furthermore, section 16.01(b) explicitly requires repair of the premises using insurance proceeds paid to the tenant pursuant to "the destruction, in whole or in part, by fire or other cause, of the

improvements[.]" The inclusion of the explicit terms "destroyed" and "destruction, in whole" in setting forth the scope of the tenant's duty to repair the premises renders the term unambiguous. When read in context, the term "repair" is not reasonably susceptible of being understood in more than one sense. Obviously, the parties intended for the tenant to repair the property—even in the event of a total loss. Thus, we conclude that the trial court erred in holding that the term was ambiguous and interpreting it to exclude a duty to rebuild in the event of a total loss.

Apparently in the alternative, the trial court further found that it was impossible to rebuild the premises pursuant to the lease agreement "when [Elias's] monthly payments on the mortgage and rent would have been in excess of [$7,500] and there was no reasonable possibility that a rebuilt donut shop … could generate enough income to pay that amount." Trial Court Opinion, 12/31/13, at 21-22. The defense of legal impossibility, however, is premised upon an objective standard. *See Luber v. Luber*, 614 A.2d 771, 774 (Pa. Super. 1992). Thus, it does not apply if it is merely beyond the party's ability to perform; it must be beyond any person's ability to perform. *See id*. "[A] party generally assumes the risk of his own inability to perform his contractual duties." *Id*. (citations omitted).

Elias has not, indeed cannot, establish that it is impossible for *anyone* to rebuild the premises. He has not identified any physical feature of the leased premises or legal impediment that prevents rebuilding. Rather, he

- 7 -

has established, at best, that *he* cannot afford to rebuild the premises. This does not rise to the level of legal impossibility. ***See id***. The trial court erred in concluding that rebuilding of the leased premises was impossible.

Next, PR argues that the trial court erred in holding that it had a duty to mitigate the damages it suffered from Elias's breach. Section 19.05(b) of the lease provides that in the event of a default by Elias, PR was entitled "to recover … as liquidated damages for loss of the bargain and not as a penalty, a sum equal to the Fixed Minimum Rent multiplied by the number of months and fractional months which would have constituted the balance of the term, together with costs and attorneys' fees." In other words, Section 19.05(b) provided that in the event that Elias breached the lease, PR was entitled to damages in an amount equal to the rental payments that it would have received until January 31, 2021, the end of the lease term. PR calculated the liquidated damages due under the lease to be $472,711.51.

In contrast, the trial court found that PR had intentionally failed to re-let the property in order to increase its claim against Elias. As a result, the trial court limited the damages for which Elias was liable to such rent that was due and unpaid as of December 31, 2007, or $40,000.00.

The Supreme Court of Pennsylvania has ruled that "a non-breaching landlord whose tenant has abandoned the property in violation of the lease has no duty to mitigate damages." ***Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.***, 715 A.2d 1082, 1084 (Pa. 1998). The Supreme

Court provided five reasons for this rule. First, that the rule has been firmly established in Pennsylvania jurisprudence for over 100 years. *See id*. Second, that the "rule has the virtue of simplicity." *Id*. Third, that the legislature's 1951 comprehensive overhaul of landlord/tenant law did not seek to modify this rule. *See id*., at 1085. Fourth, that it was fundamentally unfair for a breaching tenant to require a non-breaching landlord to expend time, effort, and money to mitigate the damages arising from the breach. *See id*. Finally, the Court recognized that in the case before it the tenant had the right to sublet the property with the landlord's approval, which could not be unreasonably withheld. *See id*.

The trial court attempted to distinguish *Stonehedge* from the present case with the following reasoning.

> This is a lease with nearly fifteen years remaining on its term, and sums claimed to be due amounting to nearly $500,000.00 in rent, plus the illusory claimed residual value of the donut shop structure. Unlike *Stonehedge*, the leasehold improvements in this case were completely demolished as the result of a fire. The lot was cleared and available for a new tenant to make improvements for any viable business. It is impossible for the Tenant in this case to reconstruct a donut shop that [can] conceivably generate enough income to pay a mortgage and the rent due under the terms of the pre-existing lease. Adjacent structures owned by Landlord – that were larger and more valuable "as-is" than the tiny donut shop that was destroyed by arson here – were deliberately demolished to make way for one or more new business (most notably an Olive Garden restaurant) and parking lots for the new business.

Trial Court Opinion, 12/31/13, at 21.

- 9 -

The trial court's attempt to distinguish **_Stonehedge_** is simply untenable. Initially, we observe that the amount in controversy or the remaining term of the lease is not relevant to the Supreme Court's explicit reasoning in adopting the **_Stonehedge_** rule. These circumstances therefore do not support distinguishing the present case from **_Stonehedge_**.

The remainder of the trial court's explicit reasoning centers on the fact that the leased premises were destroyed by arson. However, as noted above, the plain language of the lease agreement imposed the duty to rebuild the premises in the event of a fire upon Elias. Thus, this circumstance cannot favor Elias in his attempt to escape the **_Stonehedge_** rule.

We therefore conclude that the trial court erred when it held that **_Stonehedge_** was not controlling. As a matter of law, PR had no duty to mitigate the damages that arose from Elias's failure to rebuild the property and his abandonment of the property.

In the alternative, the trial court found that the liquidated damages clause of the lease agreement was an unconscionable contract of adhesion.

> [A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts. Nevertheless, where material facts are disputed, for example, concerning the general

commercial background underlying a challenged transaction and/or the commercial needs of a particular trade, fact finding may be necessary.

*Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119-120 (Pa. 2007) (citations omitted). Even if a contract is determined to be procedurally unconscionable, or a contract of adhesion, a court must still analyze the terms at issue to determine if they unreasonably favor the opposing party. *See Bayne v. Smith*, 965 A.2d 265, 270 (Pa. Super. 2009).

Here, even assuming that the lease agreement was procedurally unconscionable, we conclude that Elias has not met his burden of establishing that the liquidated damages provision of the lease was substantively unconscionable. The liquidated damages provision reflects the law of Pennsylvania as set forth in *Stonehedge*. Accordingly, as a matter of law, it cannot be found to unreasonably favor PR.

We therefore conclude that the trial court erred in finding the liquidated damages provision to be unconscionable. Furthermore, to the extent that the trial court's finding of legal impossibility applies to the liquidated damages provision, we conclude that such a finding is in error for the same reasoning we applied above regarding Elias's duty to rebuild the premises.

The only remaining issue involves the trial court's award of attorneys' fees to PR. The trial court limited the legal fees awarded to PR to the amount of $5,000 pursuant to its finding that PR had improperly failed to

mitigate damages in this matter. As we have concluded that PR had no such duty, we vacate the award of attorneys' fees and remand for the trial court to calculate a reasonable award based upon the appropriate law and circumstances.

In summary, we affirm the trial court's finding that Elias breached the lease; we reverse and vacate the remainder of the judgment.

Judgment affirmed in part, reversed and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2015