532 A.2d 942

Board of Supervisors of Charlestown Township, Appellant *v.* West Chestnut Realty Corp., Appellee.

Argued June 8, 1987, before Judges CRAIG, DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*John D. Snyder*, with him, *James E. McErlane, Lamb, Windle & McErlane, P.C.*, for appellant.

*Patrick C. O'Donnell*, with him, *John E. Good*, for appellee.

OPINION BY JUDGE CRAIG, October 28, 1987:

The Board of Supervisors of Charlestown Township (board) appeals an order of the Court of Common Pleas of Chester County reversing the board's denial of an application by West Chestnut Realty Corporation (developer) for final approval of phase one of the Charlestown Oaks planned residential development (PRD), pursuant to Article VII of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10701-10711.

Following a series of public hearings, the board had granted tentative PRD approval, subject to stated conditions, on December 27, 1978. The board issued additional conditions of approval on January 25, 1979, addressing problems of storm water management, traffic, utilities, landscaping and miscellaneous concerns.

The neighboring township of East Whiteland and a private citizen group appealed the board's tentative approval of the PRD plan to the common pleas court. They withdrew the appeal when East Whiteland, the citizen group and the developer stipulated to additional terms of approval for Charlestown Oaks regarding storm

water management. The board approved the terms of the stipulation.

On July 2, 1979, the developer filed an application, including plans, for final PRD approval of phase one of the development. After four public hearings, the board denied final approval of the plan. The developer sought a writ of mandamus in the trial court, seeking a deemed approval based on a claim of delay in the board's decision, under MPC §711(c), 53 P.S. §10711(c). The trial court refused the approval, and on appeal, this court affirmed the trial court's ruling.[1]

Developer also filed a statutory appeal from the board's decision in the court of common pleas. On remand from the trial court, the board made findings of fact and conclusions of law in support of its decision to deny final approval. On July 14, 1986, the trial court reversed the board's decision and ordered the board to grant final approval to the developer's plan, subject to a single condition requiring the developer to provide lighting at street intersections. The trial court concluded that the board had committed legal error by subjecting the plan to review under inapplicable local ordinances, and had abused its discretion by employing standards more specific and stringent than those set out in the township's regulations.

On appeal, the township presents the following issues:

    1.  Were the regulations of the Charlestown Township Subdivision and Land Development Ordinance (SLDO) improperly employed in the review of the final PRD plan?

    2.  Was the final PRD plan required to depict all the improvements shown on the approved tentative plan?

---

[1] *West Chestnut Realty Corp. v. John C. Martin, Jr.,* 63 Pa. Commonwealth Ct. 641, 438 A.2d 1024 (1982).

3. Were the board's grounds for denial properly based on the developer's noncompliance with township regulations?

Our scope of review where, as here, the court of common pleas took no additional evidence, is limited to a determination of whether or not the governing body abused its discretion or committed an error of law. *Council of Borough of Baldwin v. Nernberg*, 71 Pa. Commonwealth Ct. 642, 455 A.2d 773 (1983).

### Applicability of Subdivision and Land Development Regulations

Under the enabling legislation of MPC Article VII, Charlestown Township enacted a Residential Cluster and Multi-family District Ordinance (PRD ordinance) to regulate PRD projects. The township also has a Subdivision and Land Development Ordinance (land development ordinance) enacted pursuant to MPC Article V, governing subdivision and land development. In reviewing the developer's final plan for Charlestown Oaks, the board found several violations of land development ordinance regulations.[2]

The trial court concluded that the board should not have used the land development ordinance regulations in reviewing the PRD plans. The court held that when a PRD ordinance does not specifically incorporate other municipal standards, the board cannot use other ordinances to evaluate a PRD plan. *See McKee v. Township of Cain*, 25 Chester County Reporter 304 (1977). The

---

[2] Violations cited included a failure to delineate tree masses to be removed, PRD ordinance §503(h); incomplete and/or inadequate construction plans for streets and sewers, PRD ordinance §504; plans for a six-inch crushed aggregate road base, rather than the required eight inches, PRD ordinance §703(c)(i); and plans exceeding the maximum 4% grade on streets within fifty feet of an intersection, PRD ordinance §702(S).

PRD ordinance specifically adopted only the land development ordinance's procedure for preparing PRD plans; therefore, the trial judge decided, other land development ordinance provisions could not be applied to the PRD review.

Concerning this point, MPC section 705(f), 53 P.S. §10705(f), provides:

> The authority granted a municipality by Article V to establish standards for the location, width, course and surfacing of streets, walkways, curbs, gutters, street lights, shade trees, water, sewage and drainage facilities, easements or rights-of-way for drainage and utilities, reservations of public grounds and other improvements, shall be vested in the governing body or its designated agency for the purposes of this article. The standards applicable to a particular planned residential development may be different than or modifications of the standards and requirements otherwise required of subdivisions authorized under an ordinance adopted pursuant to Article V, provided, however, that an ordinance adopted pursuant to this article shall set forth the limits and extent of any modifications or changes in such standards and requirements in order that a landowner shall know the limits and extent of permissible modifications from the standards otherwise applicable to subdivisions.

Section 705(f) thus vests the board with the power to apply subdivision and land development standards to PRDs. The language of section 705(f) does not automatically incorporate Article V standards into PRD ordinances; it merely grants the governing body the authority to do so, whenever the governing body so prescribes in either its PRD or land development ordinance.

The trial court correctly noted that the township's PRD ordinance does not specifically incorporate the standards of the land development ordinance. However, a PRD does come within the definitions of a "land development" and "subdivision," as stated in sections 401(k) and (t) of the land development ordinance.[3] The standards included in the land development ordinance therefore do apply to the developer's plan, not by incorporation into the PRD ordinance through section 705(f), but through the broad coverage of the land development ordinance itself.

Following the above analysis, the board acted properly by applying the land development ordinance standards to developer's plan, and the noted deviations from those standards were proper grounds for denial.

---

[3]    (k) *Land Development*. The improvement of one or more contiguous lots, tracts or parcels of land for any purpose involving a group of two or more buildings, or the division or allocation of land between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, building groups or other features, a subdivision.
. . . .
       (t) *Subdivision*. The division or redivision of a lot, tract or parcel of land, by any means, into two or more lots, tracts, parcels or other divisions of land, including changes in existing lot lines, for the purpose, whether immediate or future, of lease, transfer of ownership or building or lot development; provided, however, that the division of land for agricultural purposes into parcels of more than ten (10) acres not involving any new street or easement of access, shall be exempted; *and any development of land for multi-unit use, as a shopping center, industrial park, or multiple dwelling building, shall for the purposes of this Ordinance, be considered a subdivision or a land development*. (Emphasis added.)

*Final Plan Confirmation of Tentative Plan Improvements*

The board also objected to inconsistencies between the approved tentative plan and the final plans submitted by the developer. Numerous improvements—tot lots, pedestrian trails, picnic areas, sidewalks, gravel pathways, an entrance sign, walkways and steps — depicted in the tentative plan did not appear shown on the final plan.

The trial court interpreted the board's objection as applying a more stringent standard on final review than had been imposed on the approved tentative plan. Reviewing the alleged discrepancies, the trial court held that the board could not impose additional conditions upon final approval beyond those imposed on the tentative plans, *Hakim v. Board of Commissioners of Township of O'Hara,* 27 Pa. Commonwealth Ct. 405, 415, 366 A.2d 1306, 1311 (1976); found that the final plan was in substantial compliance with the approved tentative plan; and stated that, for purposes of review, it would treat the plans, designs and materials approved in the tentative plan as part of the application for final approval.

Section 711(c) of the MPC, 53 P.S. §10711(c), provides in part:

In the event the development plan as submitted contains variations from the development plan given tentative approval, the governing body may refuse to grant final approval and shall, within thirty days from the filing of the application for final approval, so advise the landowner in writing of said refusal, setting forth in said notice the reasons why one or more of the said variations are not in the public interests.

The developer argues that section 711(c) does not require a mirror image of the tentative plan, but only

that the final plans be in substantial compliance with it. In the record, the developer gave various explanations for the inconsistencies (*e.g.*, one of the tot lots was eliminated in order to comply with the stormwater stipulation; the PRD ordinance did not require the entrance sign or steps and walkways to be depicted), and offered to amend the plans to include some of the missing improvements (pedestrian trails, picnic areas, some sidewalks). Rather than submit amended plans following the board's denial, however, the developer pursued this appeal.

Although the developer argues that the board could not have required these improvements to be included in the tentative plan, and therefore does not have the authority to do so at the final approval stage, the fact is that the developer itself voluntarily presented a tentative plan including these amenities. Just as a municipality cannot impose new conditions when reviewing final plans after tentative approval has been given, *Hakim,* a developer is bound to an approved tentative plan, except for changes made in order to comply with the conditions of tentative approval.

Some difficulty may lie in the fact that an "application for final approval" under MPC §711 normally may contain not just a single "final plan" intended for recording, but also various additional final plan documents needed to show all required aspects of the final application. Of course, the plan to be recorded need not be burdened with excessive, inappropriate or non-customary detail, but there must be sufficient other documents—for filing with the municipality as distinguished from recording—to provide a record of compliance adequate for future reference.

In sum, the board acted within its authority under section 711(c) in refusing to grant final approval upon finding that the final plan was not in compliance with

the approved tentative plan. The developer had the option to refile its application without the noted variations; it chose not to do so.

## Compliance with PRD. Regulations

Finally, the board cites specific points where the final plans do not comply with PRD regulations. The township's engineering consultant noted and discussed these deficiencies at the public hearings before the board's vote to deny final approval. Following these hearings, the board's ultimate role was that of factfinder, albeit not an entirely disinterested one.

In reviewing the board's factual findings, this court must look to the cited regulation and the alleged deficiency in the developer's plan. A municipality may not condition its approval upon standards not contained in its regulations. *Montgomery Township v. Franchise Realty Interstate Corporation,* 54 Pa. Commonwealth Ct. 535, 422 A.2d 897 (1980).

Review of the alleged deficiencies and cited regulations reveals several points where the board's findings do apply a stricter standard than that in the actual ordinance. The board argues that PRD ordinance section 017.B.2 requires the plans to show where water and sewer connections will be located and whether they are functional and practical. The actual language of the section, however, calls for "information or provision for and maintenance of water and sewer disposal including copies of permits obtained under authority of statutes of the Commonwealth." Similarly, the board argues that PRD ordinance section 017.A.18 requires architectural drawings to relate to the construction site. The language of the section requires "architectural drawings and elevations to scale of all buildings, said drawings to bear seal of architects." There is no reference to topography at all.

Most of the other findings are not so clearcut. Generally, the board's objection on many of these points is that the plan's depictions are either incomplete and/or inadequate. In these instances, the board details the perceived inadequacies: utilities delineated on some but not all of the plan sheets; no lighting of offstreet parking areas, street intersections or sidewalks shown on the plans; contour and grading plans shown on some plans but not all; some but not all of proposed water lines depicted, etc. The ordinance sections cited by the board do call for these improvements to be depicted in the plans. The question is whether a developer may depict these items any place in the plan drawings, or whether these improvements must be integrated into all phases of the integrated application. Given the complexity of this proposed development, we cannot hold that the board committed legal error or abused its discretion in requiring the developer to depict these items at the various stages of construction.

A major area of the board's concern was the developer's plan regarding stormwater management. The proposed development is located on steep slopes, above a subdivision already experiencing stormwater management problems. At the time of tentative approval, the board approved the stormwater plan in concept, conditioned approval on the filing of detailed plans, and reserved all rights of final approval. Concern over the stormwater plans prompted the suit and subsequent stipulation between developer's and the adjacent township. The developer's final plans proposed a retention basin located on a hillside directly above the Aston Woods subdivision.

PRD ordinance section 008(f) states: "All storm drainage design and facilities shall be subject to the approval of the township engineer." Among the engineer's

objections to the proposed stormwater plan were the following:

1. The plans do not show how the concrete dam, with a 2.35 million gallon capacity, would be anchored into the side of the hill proposed for its location;

2. The plan does not show how it will prevent the concentration of stormwater runoff into the adjacent developed properties, as required by section 008.C;

3. Though the developer submitted preliminary information to substantiate its design of the stormwater management ponds, it failed to provide sufficient information on the distribution and supporting ability of existing soils and rocks;

4. The plan does not provide the result of compaction tests, as required by section VII.K of the grading control ordinance;

5. The plan does not show adequate protective measurements of the critical points of the ponds and basins in order to ensure free flow and drainage, in accord with section VII.C;

6. The plan lacks adequate engineering detail to evaluate the velocity in the swales, the design of the roof drain system, the details of pond No. 2.

This court has held that specification for stormwater management must be precise in applications for final approval under section 711(a). *Appeal of Molnar,* 64 Pa. Commonwealth Ct. 578, 441 A.2d 487 (1982). Considering the size of the proposed stormwater retention basin, the proposed location alongside a steep slope, and the potential for catastrophic flooding in the adjacent township should the system fail, the board did not commit legal error nor abuse its discretion in requiring additional detail before granting final approval.

For the reasons discussed above, noncompliance with the land development ordinance regulations, deviations from the tentative plan, and various points of noncompliance with PRD ordinance regulations, we conclude that the board properly declined to grant final approval as sought by the developers. Under section 711(c)(1), the developer has the option to submit an amended application for final approval, correcting the deficiencies noted above. The decision of the trial court is reversed, and the decision of the township board is affirmed.

ORDER

Now, October 28, 1987, the order of the Court of Common Pleas of Chester County, dated July 14, 1986, is reversed.