**In re Appeal of J. Kevan BUSIK and Julia Kimberly Busik from the Action of the Solebury Township Board of Supervisors Solebury Township, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2000.

Decided Aug. 9, 2000.

Reargument Denied Oct. 12, 2000.

the trial court or in this Court. The new trial will, therefore, include all of the original defendants.

David J. Sander, Warrington, for appellant.

G. Michael Carr, Doylestown, for appellees.

BEFORE: DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, FRIEDMAN, Judge, KELLEY, Judge, FLAHERTY, Judge, LEADBETTER, Judge.

COLINS, Judge.

Before the Court is the issue of whether a subdivision applicant who accepts a condition on preliminary approval and does not appeal from that approval and imposition of condition has waived his right to challenge that condition on final approval. Solebury Township appeals from the December 28, 1998 order of the Court of Common Pleas of Bucks County (trial court) directing that the proposed subdivision plan of J. Kevan and Julia K. Busik (the Busiks) be deemed approved and striking Condition No. 4, which required the Busiks to enter into an agreement with neighboring landowners.

The Busiks own an 83.23–acre tract of land in Solebury Township that is zoned RA, Residential Agricultural. Their property wholly surrounds a parcel of land owned by the DeLaszlos. On May 13, 1991, the Busiks submitted a proposal and preliminary plan to the Township to subdivide their property into seven residential lots.

On January 5, 1993, the Township Board of Supervisors (Board) held a regular meeting at which time the Busiks' proposed subdivision was discussed. At that meeting, the Busiks agreed to, *inter alia,* Condition No. 4, which required the Busiks and DeLaszlos to reach an agreement with respect to the terms and conditions governing the use of a road that traverses the property of the respective landowners.[1]

---

1. Condition No. 4 provided as follows:
   Prior to the signing of final linen plans and their being recorded, you shall enter into a license agreement with Michael and Barbara DeLaszlo ... upon terms and conditions mutually agreeable to both, to provide for a license of ingress and egress and regress over and through said lands. Upon execution of such license agreement you shall then extinguish the easement across Tax Map Parcel 41–18–71 [the DeLaszlos' property].

On March 16, 1993, the Board granted preliminary approval of the proposed subdivision, subject to the conditions enumerated in the approval letter. (R.R. 15a)

The Busiks complied with all of the conditions except Condition No. 4. At the September 7, 1993 meeting, the Busiks advised the Township that their attempts to negotiate with the DeLaszlos had failed and requested that Condition No. 4 be eliminated or modified to provide that a court decide the respective rights of the landowners. Thereafter, the Busiks submitted a revised preliminary plan to the Board and requested final approval. The Board granted final plan approval to the Busiks, with the identical Condition No. 4, on September 16, 1993. The Busiks appealed to the trial court.

The trial court determined that the Busiks' appeal of the final plan approval was proper even though the condition being appealed from was identical to the condition that appeared in the preliminary plan approval. The trial court interpreted two sections of the Pennsylvania Municipalities Code (MPC) in reaching that result.[2]

In pertinent part, Section 1002–A of the MPC, 53 P.S. § 11002–A, provides as follows: [3]

All appeals from all land use decisions ... shall be taken to the court of common pleas ... and shall be filed within 30 days after entry of the decision ... or, in the case of a deemed decision, within 30 days after the date upon which notice of said deemed decision is given....

Section 107(b) of the MPC, 53 P.S. § 10107(b), contains the definition of "decision."

"**Decision**," final adjudication of any board or other body granted jurisdiction under any land use ordinance or this act to do so, either by reason of the grant of exclusive jurisdiction or by reason of appeals from determinations. All decisions shall be appealable to the court of common pleas of the county and judicial district wherein the municipality lies.

Citing those two sections of the MPC, the court rejected the Township's argument that the phrase "all land use decisions" includes preliminary plan approvals. The court stated that, because the definition of "decision" provides that it is a "final adjudication," it is clear that a preliminary plan approval is not an appealable decision. Thus, the court concluded that the Busiks' appeal from final plan approval was proper. The court noted that the Township cited no case law standing for the proposition that a party must appeal from an adverse preliminary plan approval.

In addition, the court decreed that the Busiks' proposed subdivision plan be deemed approved. The court reasoned that because the Board had approved the final plan in spite of the Busiks' disagreement with the condition imposed, the Board's decision was really a deemed rejection of the application as filed. *See Board of Township Commissioners of Annville Township v. Livengood*, 44 Pa. Cmwlth. 336, 403 A.2d 1055 (1979)(township's conditional approval of developer's plan deemed a rejection where applicant did not accept conditions). Further, the court concluded that because there was a rejection, the Board was then obligated to comply with the provisions of Section 508(2) of the MPC,[4] which require it to specify any defects in the application, any requirements that have not been met, and

---

2. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

3. Section 1002–A was added by Section 101 of the Act of December 21, 1988, P.L. 1329.

4. That section provides as follows:

(2) When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite the provisions of the statute or ordinance relied upon. 53 P.S. § 10508(2).

the provisions of any statutes or ordinance relied upon. *See Id.*

Finally, the trial court determined that it was appropriate for it to strike Condition No. 4 because the approval contained conditions that the applicant had rejected and that were unsupported by statute or ordinance. In support of its action, the court cited *Montgomery Township v. Franchise Realty Interstate Corp.,* 54 Pa. Cmwlth. 535, 422 A.2d 897 (1980). In that case, the township had attempted to condition approval of the developer's plan on the condition that the patrons of its proposed McDonald's restaurant be permitted to turn only right upon exiting. We affirmed the trial court's decision where it directed that the proposed plan be deemed approved, but subject only to the conditions acceptable to the developer. We reasoned that a deemed approval with only the conditions acceptable to the developer was appropriate because the township had attempted to condition approval upon the developer meeting a standard not contained in its regulations and which the developer had rejected.

█ In the instant case, the township filed a timely notice of appeal of the trial court's order with this Court.[5] On appeal we must decide the effect of the Busiks' acceptance of Condition No. 4 at the preliminary approval stage, their failure to appeal from preliminary approval, their interim attempt to comply with that condition, their subsequent refusal to accept that condition on final approval, and the Board's final approval that included Condition No. 4.

The Township argues that an applicant must file an appeal from preliminary plan approval if he disagrees with or does not accept a condition imposed on preliminary plan approval. In support of its argument, the Township cites the phrase "all land use

decisions," found in Section 1002–A of the MPC[6] and contends that preliminary plan approvals are appealable decisions that applicants must appeal to the common pleas court if they wish to preserve their challenge to the conditions imposed.

The Busiks reject the Township's argument; rather, they argue that where a municipality approves a subdivision application, but the approval is subject to certain conditions that are not acceptable to the applicant, the municipality's only option is to disapprove. *See Livengood.* They note that where a municipality does not rescind its conditional approval, there is a deemed rejection of the application as filed. *Id.* Thus as the trial court concluded, they contend that the Township in the instant case was required to comply with the mandatory provisions of Section 508(2) of the MPC, which mandates that the municipality issue specific reasons for not approving the application as filed and the provisions of the statutes and ordinances relied upon. 53 P.S. § 10508(2).

Further, the Busiks contend that, under Section 508(3) of the MPC, 53 P.S. § 10508(3), the Township's failure to comply with the requirements of 508(2) will result in a deemed approval of the application as filed. Interpreting Sections 508(2) and (3) together, the Busiks argue that since the Township in its notice of final approval failed to specify any defects in the application, the trial court correctly found a deemed approval. The Busiks challenge the validity of the Township's argument that preliminary approval is a decision that must be appealed if the conditions imposed at final approval are subject to challenge, regardless of the facial invalidity of the conditions.

█ We disagree with the trial court's determination that preliminary plan ap-

---

**5.** Where, as here, the trial court takes no additional evidence, we are limited to determining whether the governing body, committed an abuse of discretion or erred as a matter of law. *Hallett's Wood Homeowners' Ass'n v.*

*Upper Mount Bethel Township Planning Commission,* 688 A.2d 748 (Pa.Cmwlth.1997).

**6.** 53 P.S. § 11002–A.

proval does not constitute a final appealable decision. We have stated

> [I]f a governing body imposes a condition that the applicant believes is illegal or otherwise unacceptable, the applicant has the right not to accept and to appeal the denial of the application to the court of common pleas. However, the applicant has a duty to exercise its right to appeal within the time prescribed by statute.

*Bonner v. Upper Makefield Township*, 142 Pa.Cmwlth. 205, 597 A.2d 196, 200 (1991). Furthermore, we have noted that requiring the submission of both preliminary and final plans is not a mere technical filing formality. *Tuscarora Forests, Inc. v. Fermanagh Board of Supervisors*, 80 Pa. Cmwlth. 108, 471 A.2d 134 (1984). Municipalities may require a two-step preliminary approval process, each step of which serves different functions and requires more detailed information. *See Belber v. Lower Merion Township*, 163 Pa.Cmwlth. 127, 639 A.2d 1325 (1994). Thus, having concluded that preliminary plan approval with conditions may constitute a final decision, we turn to the effect of the Busiks' failure to appeal from the preliminary approval.

■ The Busiks concede that while it is proper to permit an applicant to appeal from a preliminary plan decision in order to secure or clarify rights, it makes no sense to force them to resort prematurely to the courts when there may be some chance that the issues can be resolved otherwise. They contend that, absent the obligation to accept or reject conditions at the preliminary stage, they acted appropriately in attempting to ascertain whether they would be able to fulfill Condition No. 4 prior to submitting their application for final approval. They aver that they acted responsibly by advising the Board that they could not fulfill Condition No. 4 and by asking that the condition be stricken or

modified in order to allow the landowners to resolve any dispute that might arise regarding the road in court. We disagree.

It is well established that a municipality may attach conditions to a subdivision approval, so long as the applicant accepts the conditions. *Doylestown Township v. Teeling*, 160 Pa.Cmwlth. 397, 635 A.2d 657, *petition for allowance of appeal denied*, 539 Pa. 697, 653 A.2d 1234 (1993). It is equally well established that acceptance of conditions imposed on a subdivision constitutes a waiver of future challenges to those conditions. *See Bonner; Board of Supervisors of Charlestown Township v. West Chestnut Realty Corp.*, 110 Pa.Cmwlth. 481, 532 A.2d 942 (1987), *petition for allowance of appeal denied*, 519 Pa. 657, 546 A.2d 61 (1988).

In the instant case, while it is undisputed that the Busiks attempted to negotiate with the DeLaszlos and comply with Condition No. 4, it is similarly undisputed that the Busiks agreed to the imposition of Condition No. 4. Despite the good faith effort by the Busiks, we cannot protect parties from accepting imprudent conditions.[7] Accordingly, the trial court's order directing that the plan be deemed approved without Condition No. 4 is reversed, and the order of the Board granting the Busiks final plan approval subject to condition No. 4 is reinstated.

### ORDER

AND NOW, this 9th day of August 2000, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed, and the order of the Solebury Township Board of Supervisors granting final plan approval subject to conditions is reinstated.

FRIEDMAN, Judge, concurring.

I concur and take this opportunity to point out that the majority's interpretation

---

7. *See Bonner*, 597 A.2d at 201 ("The subdivider's decision to accept the condition imposed by the Township may or may not have resulted from 'unequal bargaining.' However, the courts cannot protect all persons from their own failure to assert their rights.")

of the Pennsylvania Municipalities Planning Code [1] (MPC) as barring J. Kevan Busik's and Julia Kimberly Busik's (Busiks) challenge is the only practical result here.

The Busiks contend, however, that they should not be estopped from challenging condition number four [2] because they did not become aware that they could not meet the condition until after the expiration of the thirty-day appeal period set forth in section 1002–A of the MPC. [3] Although acknowledging their initial acceptance of condition number four, the Busiks reason that, once they became aware that they could not meet the condition and informed Solebury Township (Township) of this fact, condition number four became unacceptable to the Busiks. Thus, the Busiks argue, the Township must be deemed to have rejected the Busiks' final plan. According to the Busiks, because the Township's decision did not specify the reasons for rejection of the final plan as required by section 508(2) of the MPC, [4] section 508(3) of the MPC [5] requires that the Busiks' final plan

be deemed approved without the now unacceptable condition.

Accepting the Busiks' argument and permitting developers to challenge the contents of approved preliminary plans after the thirty-day appeal period has run would wreak havoc on the preliminary and final plan approval process provided for by section 508 of the MPC, 53 P.S. § 10508. Were this court to permit such untimely appeals, courts likely would be besieged with similar appeals by developers who experience subsequent difficulty, financial or otherwise, in meeting conditions that they accepted during the preliminary plan approval process or who simply change their minds after agreeing to a condition. Allowing such challenges would render preliminary plan approval meaningless. [6]

In practice, the preliminary plan approval process is frequently a process of contract negotiation between a developer and a municipality. In accepting a condition, a developer likely obtains a *quid pro quo* from the municipality, which *quid pro quo* may or may not be reflected in the ap-

---

**1.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

**2.** Although the majority and trial court discuss only condition number four, I note that, in the land use appeal filed in the trial court, the Busiks also asked that condition number one be eliminated from the final plan approval. (R.R. at 11a para. h, 12a, 19a.) Condition number one requires that the Busiks abandon an easement across the lands of another neighbor's property and also requires that Michael and Barbara DeLaszlo (DeLaszlos) join in and approve the Busiks' agreement to abandon that easement. (R.R. at 19a–20a.) The Busiks allege that, because they were unable to reach an agreement with the DeLaszlos regarding condition number four, they "believe" that "the DeLaszlos will refuse to execute [the] abandonment of easement agreements…" referenced in condition number one. (R.R. at 11a para. h.)

**3.** 53 P.S. § 11002–A.

**4.** 53 P.S. § 10508(2).

**5.** 53 P.S. § 10508(3).

**6.** The Busiks also argue that the Township's failure to enact a provision under section

503(9) of the MPC, 53 P.S. § 10503(9), requiring an applicant to expressly accept or reject conditions, estops the Township "from asserting that the final approval is a separate action…." (Busiks' brief at 8.) Section 503(9) provides that a municipality's subdivision and land development ordinance may include

[p]rovisions for the approval of a plat, whether preliminary or final, subject to conditions acceptable to the applicant and a procedure for the applicant's acceptance or rejection of any conditions which may be imposed, including a provision that approval of a plat shall be rescinded automatically upon the applicant's failure to accept or reject such conditions within such time limit as may be established by the governing ordinance.

53 P.S. § 10503(9). This section of the MPC, however, is of no help to the Busiks because, even if the Township's ordinance included such a provision, the Busiks **accepted** condition number four at the preliminary plan approval stage, and the Township's approval of the Busiks' preliminary plan with that condition number was an appealable decision.

proved preliminary or final plans.[7] Once the thirty-day period to appeal from conditions imposed by the preliminary plan approval expires, the approved preliminary plan, including the conditions accepted by the developer, is essentially a binding contract between the municipality and the developer.[8]

Under the doctrine of impossibility of performance[9] applicable to the construction of contracts, if, after a contract is made, a party's performance is made impracticable through no fault of his or her own, the parties may waive the difficulties or terminate the agreement, ending all contractual obligations. *West v. Peoples First National Bank & Trust Co.*, 378 Pa. 275, 106 A.2d 427 (1954).

Here, there is no question that the Busiks accepted the condition that they "**shall** enter into a license agreement with Michael and Barbara DeLaszlo . . . upon terms and conditions **mutually agreeable to both**, to provide for a license of ingress and egress and regress over and through" the DeLaszlos' property. (Majority op. at 418 n. 1.) (Emphasis added.) It is "undis-puted" that the Busiks "attempted to negotiate" with the DeLaszlos "in good faith." (Majority op. at 421.) Yet, despite their good faith efforts, the Busiks were unable to enter into a mutually agreeable license agreement with the DeLaszlos in order to satisfy that condition. Arguably, then, the Busiks' performance of their obligations under the contract with the Township became impossible.

However, even assuming that the doctrine of impossibility applied to the Busiks' contract with the Township, the Township's refusal to waive condition number four would, at most, entitle the Busiks to dissolution or discharge of their contract; they would not be entitled to have the contract enforced without the bargained-for condition. Alternatively, the Busiks might have renegotiated their contract with the Township, perhaps giving the Township an additional *quid pro quo* in return for the Township's omitting condition number four. Or, the Busiks could have filed a new preliminary plan without condition number 4 and negotiated anew for the Township's plan approval.

7. For instance, a developer may agree to a condition in return for quick subdivision approval. *See, e.g., Bonner v. Upper Makefield Township*, 142 Pa.Cmwlth. 205, 210, 597 A.2d 196, 199 (1991). Here, it appears that, in return for the ten conditions accepted by the Busiks, the Township granted the Busiks the following:

 a) A waiver from the width and paving requirements for the driveways which will serve the subdivision. The driveways serving the subdivision shall have a 10' wide cartway (with appropriate pull-off areas) with a 6" crushed stone sub-base[;]
 b) A waiver from the right-of-way requirements for the driveways serving the subdivision to permit the right-of-way shown on the plan;
 c) [A] waiver from the provision of the Municipalities Planing [sic] Code which provides that any change in the Zoning or Subdivision and Land Development Ordinance which is adverse to the Subdivision shall not affect the subdivision so that the time period during which no adverse change in the Zoning ordinance and the Subdivision and Land Development Ordi-nance shall adversely affect the development is extended from five years to ten years.
 (R.R. at 17a.)

8. Indeed, the MPC provides that, once a preliminary plan is approved, the applicant generally is entitled to final approval in accordance with the terms of the approved preliminary plan. *See* section 508(4)(i), 53 P.S. § 10508(4)(i).

9. "Impossibility of performance" means "not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, or loss involved." *West v. Peoples First National Bank & Trust Co.*, 378 Pa. 275, 282, 106 A.2d 427, 432 (1954). "Impossibility of performance," however, does not include mere inconvenience even though it may work a hardship. *International Brotherhood of Firemen and Oilers, Local 1201, AFL–CIO v. Board of Education of School District of Philadelphia*, 500 Pa. 474, 457 A.2d 1269 (1983). Nor does it include a party's financial inability to perform. *Luber v. Luber*, 418 Pa.Super. 542, 614 A.2d 771 (1992), *appeal denied*, 535 Pa. 636, 631 A.2d 1008 (1993).

Viewed in this light, the majority's holding not only comports with the MPC but produces an eminently fair result because it places the Busiks in no worse a position than if we had applied basic contract principles.