# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Cardiff Heights, LP,<br>Appellant | : | |
| | : | |
| | : | |
| v. | : | No. 1370 C.D. 2016 |
| | : | ARGUED: November 14, 2017 |
| Ross Township Board of | : | |
| Commissioners and Bradford | : | |
| Estates Homeowners Association, | : | |
| Irving Portnoy, Joanne Portnoy, | : | |
| David Williamson, Michael Scotto | : | |
| and Frank P. Cuda, Vincent D. | : | |
| Rizzo, IV, and Vance Rizzo | : | |
| | | |
| Cardiff Heights, L.P. | : | |
| | : | |
| v. | : | No. 47 C.D. 2017 |
| | : | ARGUED: November 14, 2017 |
| Ross Township Board of | : | |
| Commissioners and Bradford Estates | : | |
| Homeowners Association, Irving | : | |
| Portnoy, Joanne Portnoy, David | : | |
| Williamson, Michael Scotto and | : | |
| Frank P. Cuda, Vincent D. Rizzo, IV, | : | |
| and Vance Rizzo | : | |
| | : | |
| Appeal of: Frank P. Cuda, Vincent D. | : | |
| Rizzo, IV, and Vance Rizzo | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE J. WESLEY OLER, JR., Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE OLER, JR.                    FILED:  December 27, 2017

In this consolidated matter, Cardiff Heights, L.P. (Cardiff) and Frank P. Cuda, Vincent D. Rizzo IV, and Vance Rizzo appeal from the July 18, 2016 order of the Court of Common Pleas of Allegheny County (trial court) which affirmed the decision of the Ross Township Board of Commissioners (Board) denying Cardiff's planned residential development (PRD) application. We affirm.

This appeal involves approximately 19.7 acres of vacant property (Property) located on the ridgeline of a hill between McKnight Road and Evergreen Road in Ross Township, Allegheny County (Township). The Property consists of three parcels containing significant steep slopes. The Property is split-zoned with two of the parcels consisting *in toto* of 17.37 acres located in an R-1 (One-Family) District, and the third parcel consisting of 2.3 acres located in a C-1 (Regional Commercial) District. Appellant Cardiff is the equitable owner of the Property. Appellants Frank P. Cuda (Cuda), Vincent D. Rizzo IV (Rizzo IV) and Vance Rizzo (Rizzo) are the legal title owners of two of the parcels. Intervenors are neighboring landowners (Objectors).[1]

On August 11, 2014, Cardiff filed an application for tentative approval of a PRD, proposing to build thirty single-family homes. (R.R. vol. I at 16a.) Subsequently, the Township advised Cardiff that it must also file a conditional use application, and Cardiff did so. A PRD is permitted as a conditional use in both the R-1 and C-1 zoning districts. Ultimately, Cardiff submitted four tentative plans to the Township.[2] On May 15, 2015, Cardiff filed a fourth plan seeking tentative approval (PRD Application). Under this plan, Cardiff sought to build seventy-two

---

[1] Intervenors are Bradford Estates Homeowners Association, Irving Portnoy, Joanne Portnoy, David Williamson, and Michael Scotto.
[2] The second plan, dated February 4, 2015, proposed thirty-six "lifestyle" homes. The third plan, dated April 7, 2015, proposed seventy-one townhomes.

townhomes on the Property. This seventy-two townhome plan (Plan) is the subject of this appeal.

On May 20, 2015, Cardiff presented the seventy-two townhome Plan to the Board at a public hearing. Cardiff submitted evidence in support of the Plan. Objectors appeared, became parties to the proceeding, and expressed their opposition to the Plan. At the conclusion of the hearing, the Board voted to deny the seventy-two townhome PRD Application. (R.R. vol. III at 1466a-67a.) On July 2, 2015, the Board issued written findings of fact, conclusions of law and a decision (Decision) denying Cardiff's PRD Application. Cardiff appealed from this Decision to the trial court. Objectors, Cuda, Rizzo IV and Rizzo intervened before the trial court.

The trial court issued a decision and order, which affirmed the Board's Decision denying Cardiff's PRD Application. Cardiff, Cuda, Rizzo IV and Rizzo all appealed to this Court. The appeals have been consolidated for disposition.[3] (Cardiff, Cuda, Rizzo IV and Rizzo are collectively referred to as Appellants).

Before this Court, Appellants raise numerous issues which may be summarized as follows: (1) whether Cardiff's Plan was deemed approved; (2) whether the Board erred or abused its discretion in determining that Cardiff's Plan failed to comply with ordinance requirements relating to: (i) streets, including cul-de-sacs; (ii) density, feasibility and use; (iii) steep slope disturbance; and (iv) useable open space; and (3) whether the Township failed to exercise good faith when it denied Cardiff's Plan.

---

[3] In a land use appeal, where, as here, the trial court took no additional evidence, this Court's review is limited to determining whether the Board committed an error of law or an abuse of discretion. *See Board of Supervisors of Charlestown Township v. West Chestnut Realty Corp.*, 532 A.2d 942, 944 (Pa. Cmwlth. 1988). An abuse of discretion occurs when the Board's findings are not supported by substantial evidence. *See Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 639 (Pa. 1983).

2

**Deemed Approval**

Cardiff sets forth four grounds which it contends support a deemed approval. Cardiff's first two arguments are premised on Cardiff's belief that obtaining approval of the Plan involved two distinct processes--one seeking conditional use approval and the other seeking tentative approval of the PRD Application. In essence, Cardiff is arguing that because it filed two separate applications and paid two separate fees, and because both applications were noticed, Cardiff was entitled to two separate votes and two separate written decisions. Cardiff maintains that the Board failed to issue a written decision on the conditional use application and that it is therefore deemed approved. Similarly, Cardiff argues that the Board voted only on the conditional use application. Cardiff contends that the Board failed to vote on the PRD Application, and that it is therefore also deemed approved. Both the Board and Objectors argue, *inter alia*, that the issue of deemed approval has been waived because Cardiff failed to raise and develop the issue before the trial court.

Issues not raised in the trial court are waived and cannot be raised for the first time on appeal. Pa. R.A.P. 302(a). Similarly, where a brief "fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009).

With respect to Cardiff's argument concerning the conditional use application, Cardiff's trial court brief merely mentioned in passing that the failure to issue a written decision on the conditional use application resulted in a deemed approval. (Cardiff's trial court brief (tr. ct. br.) at 12.) This does not constitute meaningful argument that would have sufficiently alerted the trial court to an issue

3

or would have allowed for meaningful judicial review. Moreover, Cardiff effectively admitted it was not asking the trial court to decide this issue.[4] Thus, Cardiff has waived this issue.

We now turn to Cardiff's argument that the PRD Application was deemed approved because the Board allegedly failed to vote on it. Although the argument may not have been articulated artfully in Cardiff's trial court brief, we conclude it was sufficiently raised and developed before the trial court in order to avoid a finding of waiver. (Cardiff's tr. ct. br. at 12-13, 36.) Therefore, we will address it.

The Planning and Zoning Code (Zoning Ordinance) of the Codified Ordinances of Ross Township[5] provides that a developer may apply for a PRD and the Board may permit a PRD as a conditional use. Zoning Ordinance § 27-906(1)(I). The Pennsylvania Municipalities Planning Code (MPC)[6] provides:

> The application for and tentative and final approval of a development plan for a planned residential development

---

[4] Cardiff stated in its trial court brief:

> No written decision on the conditional use application was delivered to Cardiff as required under the Ross Township Ordinance at Section 27-1203.5.A. This failure to issue a written decision on the conditional use application results in a deemed approval under Section 27-1203.5.B. **Although this statutory appeal is not the proceeding to make this determination**, the Court can take notice of the fact that the failure to render a written decision within 45 days of the conclusion of the Hearing resulted in a deemed approval of the conditional use as presented….

(*See* Cardiff's tr. ct. br. at 12, emphasis added).

[5] The Township enacted the Township of Ross Township Code of Ordinances (Code of Ordinances). Chapter 27 of the Code of Ordinances is the Zoning Ordinance. Chapter 22 of the Code of Ordinances is the Ross Township Subdivision and Land Development Ordinance (SALDO). Citations begin with numerals that correspond to the Chapters within the Code of Ordinances. For example, § 27-1101 refers to a provision within Chapter 27 (Zoning Ordinance), while § 22-101 refers to a provision of Chapter 22 (SALDO).

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

> prescribed in this article **shall be in lieu of all other procedures or approvals**, otherwise required pursuant to Articles V [concerning subdivision and land development] and VI [concerning zoning] of this act.

Section 707 of the MPC, 53 P.S. § 10707 (emphasis added). Consistent with the MPC, Section 27-1101(2) of the Zoning Ordinance provides that PRD approval is subject to the standards and procedures enumerated in Part 11 of the Zoning Ordinance, which addresses a PRD. (R.R. vol. IV at 1617a.) As such, the applicable procedures for obtaining approval of a conditional use which are contained in the MPC and the balance of the Township's Zoning Ordinance do not apply to a PRD Application.

Regarding the requirements for a deemed approval, Section 709(a) of the MPC provides that, within sixty days following the conclusion of the public hearing, the governing body shall either: (i) grant tentative approval of the plan; (ii) grant tentative approval subject to specified conditions; or (iii) deny tentative approval of the plan. 53 P.S. § 10709(a). "Failure to so act within said period shall be deemed to be a grant of tentative approval of the development plan as submitted…." *Id*. The Zoning Ordinance mirrors the MPC. *See* Zoning Ordinance § 27-1105(2)(E)(1-2).

The Board held a hearing on May 20, 2015, and issued a written decision through its solicitor on July 2, 2015, forty-three days after the hearing. Therefore, the Board complied with the MPC and the Zoning Ordinance; in this regard, there is no basis for a deemed approval of the PRD Application.

Cardiff also argues that it is entitled to a deemed approval because the Board voted without discussion. Therefore, it is contended, the Board's denial was

5

not based on any findings or evidence.[7]  Cardiff has waived this argument because Cardiff did not raise this issue before the trial court.[8]   *See* Pa. R.A.P. 302(a).

Cardiff's final argument concerning deemed approval is that Cardiff's Plan is entitled to a deemed approval because the Board's denial is based on stricken evidence, in particular, a Review Memorandum issued by Gateway Engineering (Gateway) after the Board's hearing.  Cardiff failed to raise this argument before the trial court.  Therefore, it is waived.[9]  *See* Pa. R.A.P. 302(a).

## Ordinance Requirements

The Board denied Cardiff's PRD Application because the Plan failed to comply with various requirements, some of which were contained in the Township's Subdivision and Land Development Ordinance (SALDO).  In *Board of Supervisors of Charlestown Township v. West Chestnut Realty Corp.*, 532 A.2d 942, 945 (Pa. Cmwlth. 1987), this Court addressed the issue of whether regulations contained in a SALDO may be employed in the review of a PRD plan.  In reviewing

---

[7] Cardiff points to the solicitor's statement that the Board could "create" its own findings. However, Cardiff takes this statement out of context.  The solicitor's statement was made during a discussion among the parties and the Board concerning whether Cardiff should submit proposed findings of fact and conclusions of law.  (R.R. vol. III at 1465a.)

[8] Neither Cardiff's brief nor its reply brief cites to the manner in which and the place where this issue was preserved before the trial court.  *See* Pa. R.A.P. 2117(c) (concerning statement of place of raising issues or preservation of issues; Pa. R.A.P. 2119(e) (same).

[9] We disagree with Cardiff that it preserved this argument in the bad faith section of its trial court brief.  That section does not set forth any argument concerning a deemed approval.  (*See* Cardiff's tr. ct. br. at 15-16.)  Additionally, although the trial court's order striking the Review Memorandum was issued after Cardiff filed its brief with the trial court, both Cardiff's Motion To Strike the Review Memorandum and its brief were filed with the trial court on the same day.  (*See* trial court docket entries, R.R. vol. I at 3a.)  Cardiff certainly could have presented this argument to the trial court, noting its concurrent motion.  Further, Cardiff does not point to any specific findings of fact or conclusions of law that rely on the stricken material.  Cardiff's failure to develop this argument precludes meaningful appellate review by this Court.  *See Banfield v. Cortes*, 110 A.3d 155, 168 n. 11 (Pa. 2015).

6

Section 705(f) of the MPC,[10] now reenacted as Section 705(h) of the MPC, we concluded that Section 705 vests the governing body with the power to apply standards set forth in a SALDO to PRDs. *See Charlestown Township*, 532 A.2d at 945. We noted that the language of Section 705 does not automatically incorporate Article V standards (concerning SALDOs) into PRD ordinances; rather, Section 705 merely grants the governing body the authority to do so whenever the governing body so prescribes **either** in its PRD **or** in its land development ordinance. *Id.*

In *Charlestown Township*, the township's PRD ordinance did not specifically incorporate the standards of the SALDO pursuant to Section 705 of the MPC. However, this Court held that the standards included in the township's SALDO applied to the developer's plan because a PRD came within the SALDO's definition of "land development." *See id.*

Similarly, Part 11 of the Township's Zoning Ordinance, entitled "Planned Residential Development" (PRD Ordinance), does not specifically incorporate the Township's SALDO. *See* Zoning Ordinance § 27-1101.2. However,

---

[10] Section 705(f) of the MPC was reenacted and amended as Section 705(h) of the MPC by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10705(h). Section 705(h) retained the language relevant here which provides:

> [t]he authority granted a municipality by Article V [concerning SALDOs] to establish standards for the location, width, course and surfacing of streets, … shall be vested in the governing body or the planning agency for the purposes of this article. The standards applicable to a particular planned residential development may be different than or modifications of, the standards and requirements otherwise required of subdivisions authorized under an ordinance adopted pursuant to Article V, provided, however, that provisions adopted pursuant to this article shall set forth the limits and extent of any modifications or changes in such standards and requirements in order that a landowner shall know the limits and extent of permissible modifications from the standards otherwise applicable to subdivisions.

53 P.S. § 10705(h).

after reviewing the Township SALDO's definition of "land development," we note that it is similar to that in *Charlestown Township*.[11]  We conclude, therefore, that a PRD comes within the definition of "land development" as defined in the Township's SALDO.  *See* SALDO § 22-201; *see also Charlestown Township*.  Accordingly, the standards included in the Township's SALDO do apply to the Plan through the broad coverage of the SALDO itself.  *See Charlestown Township*.

An application for tentative approval must be approved if the plan complies with all objective provisions of the applicable ordinance as well as all other applicable regulations.  *Harvin v. Board of Commissioners of Upper Chichester Township*, 33 A.3d 709, 715 (Pa. Cmwlth. 2011).  However, the rejection of a tentative plan for a PRD may stand if validly supported by a single legitimate reason.  *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, 999 A.2d

---

[11] Under the Township's SALDO, a "land development" is defined as any of the following activities:

> (a) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:
>> 1) A group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure.
>> 2) The division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.
> …

SALDO § 22-201.  In *Charlestown Township*, "land development" was defined as:

> The improvement of one or more contiguous lots, tracts or parcels of land for any purpose involving a group of two or more buildings, or the division or allocation of land between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, building groups or other features, a subdivision.

*Charlestown Township*, 532 A.2d at 945, n. 3.

630, 635 (Pa. Cmwlth. 2010). In discussing what constitutes a legitimate reason for rejecting a plan, this Court has stated that the unmet requirements must be objective and substantive, and not technical, in order to justify outright rejection of a plan. *Id.* at 635-36. To be objective, the ordinance must contain standards by which compliance can be measured. *Id.* at 636. Where at least one objective, substantive ordinance requirement is not met, the Board may reject the plan outright without committing legal error or an abuse of discretion. *Id.*

The Board denied Cardiff's PRD Application for several reasons, including the following: (i) the Plan's proposed cul-de-sac street exceeded the maximum permitted length for cul-de-sac streets; and (ii) the Plan's proposed cul-de-sac street did not meet the required minimum widths with respect to the right-of-way and cartway radii. (C.L. Nos. 21(e)&(f); *see* C.L. Nos. 17-18.) Cardiff argues that it satisfied the Township's street design requirements, and that the Board erred in denying its application on those grounds. Cardiff does not dispute the Board's findings with respect to the proposed street's specifications, such as the proposed length and radii. Instead, Cardiff maintains that the Board erred because: (i) it incorrectly called the sole proposed street on the Plan a Minor or Local Street instead of a Private Street and applied public street standards to the Plan's private street; (ii) it required final street-design standards which are not required for a tentative plan; and (iii) it never informed Cardiff that there was an issue with the street design, which is evidence of the Township's bad faith. In support of its argument that the proposed private street does not need to meet public street standards, Cardiff points out that its first two plans called for a public street, and Gateway noted a modification was required because the proposed street exceeded the maximum

9

permitted length. However, Cardiff's third plan called for a private street, and the note concerning a modification was removed.

The Township's SALDO requires that all streets be constructed in accordance with Township specifications. SALDO § 22-603(1)(A). A street is defined to include "a street or road … or "any other ways used or intended to be used by vehicular traffic or pedestrians whether public or private." Zoning Ordinance § 27-202; *see also* SALDO § 22-201(H) (defining street in identical terms as in the Zoning Ordinance). Indeed, streets in a PRD may be public or private. Zoning Ordinance § 27-1106(5)(c). A cul-de-sac is defined as "a dead-end street with a vehicular turn-around at the dead-end." SALDO § 22-201(H). Thus, the proposed cul-de-sac street is a street and must be constructed in accordance with Township specifications regardless of whether it is public or private.

Concerning Cardiff's argument that it was not appropriate to consider street design requirements as part of the process for tentative plan approval, we note the Zoning Ordinance sets forth the review process for a PRD, which includes the submission of a preliminary development plan (application for tentative approval), along with supporting documentation, including a site plan and supporting maps. Zoning Ordinance § 27-1105(2)(B)(3). The site plan and supporting maps must contain certain minimum information, including "the existing and proposed vehicular circulation system of collector and local streets or roads … including major points of access to public rights-of-way…." Zoning Ordinance § 27-1105(2)(B)(3)(e). Further, the Zoning Ordinance provides that the Board may give tentative approval to a preliminary development plan only if it is found to meet certain criteria, including a requirement that both the physical design of the proposed preliminary development plan and the total environment of the proposed preliminary

10

development plan adequately provide for traffic facilities. Zoning Ordinance, § 27-1105(D)(4)&(5). Additionally, Section 707(4) of the MPC sets forth requirements concerning information that must be contained in an application for tentative approval of a PRD. 53 P.S. § 10707(4). That section provides that the municipality shall require the tentative development plan to contain only such provisions as are reasonably necessary to disclose "the location and width of proposed streets and public ways." 53 P.S. § 10707(4)(vii). Thus, the Board did not err in considering whether the Plan's proposed street complied with the requirements concerning length and radius widths.

With respect to the length requirement, Section 22-603(8) of the SALDO provides that cul-de-sac streets, permanently designed as such, shall not exceed 900 feet in length. (R.R. vol. IV at 1865a.) This section is specific to cul-de-sac or dead-end streets and does not differentiate between private and public streets. Cardiff's proposed street is 1200 feet in length and therefore clearly exceeds the permissible length. [12] *See Robal*.

Additionally, with respect to the cul-de-sac radius requirements, Section 22-603(2) of the SALDO requires that a permanent cul-de-sac have a minimum right-of-way radius of fifty feet and a minimum cartway radius of forty feet. (F.F. Nos. 29(e)&(f); R.R. vol. IV at 1863a.) The proposed cul-de-sac right-of-way radius and cartway radius are both only thirty feet. (F.F. Nos. 28(e)&(f),

---

[12] The Board stated that Cardiff requested a modification of the street length requirement but did not establish grounds for the modification. (C.L. Nos. 17-18.) Although Cardiff requested a modification of the street length in its second plan, it did not request a modification in its fourth Plan, which was presented to the Board. Under the circumstances, however, the fact that the Board erroneously stated that Cardiff requested a modification in its fourth Plan is harmless error.

11

C.L. Nos. 21(e)&(f).) Both of these radii are less than the applicable cul-de-sac minimum requirements and, therefore, violate the ordinance requirements.[13]

The requirement concerning the cul-de-sac's maximum permitted length, as well as the requirements concerning the minimum right-of-way and cartway radii of the cul-de-sac are objective requirements because there is a sufficient standard-- a standard measurement-- by which to judge compliance. *See Robal*. These requirements are also substantive, because they are not merely technical in nature, such as a drawing requirement that could be easily corrected. *See Robal*. Further, the MPC specifically authorizes standards for the location and widths of streets. Section 705(h) of the MPC, 53 P.S. § 10705(h). Either of these deficiencies is sufficient to support the Board's denial. Thus, because there was at least one objective, substantive ordinance requirement that was not met, the Board could reject the Plan outright and deny the PRD Application without legal error or an abuse of discretion.[14] *See Robal*.

**Bad Faith**

Cardiff argues that the Township failed to proceed in good faith in reviewing and processing the application and in rendering its denial, and that,

---

[13] With respect to Cardiff's argument that the Board erroneously applied public street standards to a private street, we note that Cardiff focuses on Section 22-603(2) which pertains to street widths. That section lists among the separate categories: "Minor or Local" Streets; "Unopened Recorded Street (Private)" and "Permanent Cul-de-Sac." Notably, the Permanent Cul-de-Sac right-of-way and cartway requirements are expressly applicable to the radius only, or in other words, the vehicular turn-around at the dead-end. SALDO §22-603(2); *see* SALDO §22-201 (defining cul-de-sac). Clearly, this does not govern the linear portion of the street. However, because of our ultimate disposition, we need not decide whether the minimum required widths for the right-of-way and cartway of the liner portion of the street are governed by the "Minor or Local" street requirements, as stated by the Board, or the "Unopened Recorded Street (Private)," as urged by Cardiff.

[14] Because of our disposition, we need not address Cardiff's remaining issues challenging the Board's other reasons for rejecting the Plan.

12

therefore, Cardiff is entitled to have its Plan approved. Cardiff contends that the denial relies almost entirely on purported deficiencies that were never communicated to Cardiff throughout the review process. Cardiff maintains that the Township did not provide any written commentary until after the Board denied the application. Cardiff also points out that it requested that the hearing remain open in order to prepare evidence to rebut Objectors' testimony, but the Board denied the request. Without citing any authority, Cardiff argues that its due process rights were violated. Cuda, Rizzo IV and Rizzo further argue that one can glean from the hearing transcript that the Board never intended to approve the Plan. Cardiff requests that the Board's decision be reversed, or, at a minimum, that Cardiff be afforded the opportunity to resubmit its plan.

"[A] municipality has a legal obligation to act in good faith upon any proposed subdivision and land development plan."[15] *Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611, 620 (Pa. Cmwlth. 2016). The duty of good faith

> includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Id.* (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977)).

A survey of the law on a municipality's obligation to exercise its review authority in good faith is helpful here. This Court recently conducted such a review

---

[15] It is appropriate to apply this duty of good faith to the PRD Application here, particularly where it comes within the definition of a "land development."

in *1050 Ashbourne Associates, LLC v. Cheltenham Township*, 167 A.3d 828 (Pa. Cmwlth. 2017):

> In *Raum*, 370 A.2d 777, the landowner filed a subdivision plan that was followed by 78 days of silence from the township. Two days before the township was scheduled to act on a proposed rezoning of the landowner's property, the planning commission disapproved the subdivision plan for the stated reasons that it contained "more information than required" and because three of the 19 lots were bisected by roads. *Id*. at 802. The landowner filed a modified plan within the two remaining days, but the township refused to consider the modification…. By waiting until the last possible moment to raise objections and then claiming there was insufficient time to consider the modified plan, the township acted in bad faith. Accordingly, this Court ordered the plan to be approved.
>
> In *Highway Materials*,[16] 974 A.2d 539, the landowner sought to develop its property in an industrial district and to that end filed a preliminary plan. At the time, the township was considering a zoning ordinance amendment to rezone the landowner's property from industrial to residential. The township engineer requested more information on the sewer design, and the landowner responded with a revised preliminary plan that included two sewer proposals. The planning commission rejected the preliminary plan, and the trial court reversed. When the landowner asked the township for input, the township responded that it was not going to help the developer "on a controversial development." *Id*. at 544. Then, when the landowner sought direction on the sewer system, the township did not respond. On these facts, the trial court held that the township "did not proceed in good faith." *Id*. at 545. This Court affirmed the trial court.
>
> Most recently, in *Honey Brook Estates*, 132 A.3d 611, the township rejected the developer's preliminary plan as incomplete, without giving the developer the opportunity

---

[16] *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009).

14

> to confer with the township. After an appeal, the trial court concluded that the developer did not prove bad faith. This Court reversed…. [T]he township declined to confer with the developer on its plan as had been its long standing practice; the township advised the developer that its plan would not be sent to the planning commission but then did so without informing the developer; and, in the meantime, the township gave additional materials to the planning commission to ensure a denial of the amended preliminary plan. The township's conduct was held to constitute bad faith.

*1050 Ashbourne*, 167 A.3d at 836–37.

In contrast, in *1050 Ashbourne*, the developer sought to construct apartment buildings, which were authorized by special exception. *Id*. at 830. The zoning hearing board granted the developer's request for a special exception. *Id*. Thereafter, the township notified the developer that it had to comply with requirements for the Preservation Overlay District; the developer responded that the Age-Restricted Overlay District requirements had precedence over any conflicting provisions in the Preservation Overlay District requirements. *Id*. The developer subsequently submitted a sketch plan, noting that it was designed in accordance with the Age-Restricted Overlay District. *Id*.

The board of commissioners held several hearings on the developer's sketch plan that were attended by the developer. *Id*. at 831. The board of commissioners requested additional time to review the plan, but the developer denied the request. *Id*. Thereafter, the commissioners voted to disapprove the sketch plan. *Id*. The developer argued that the commissioners acted in bad faith because the stated reasons for disapproving the sketch plan had not been raised during the proceedings on the developer's request for a special exception. *Id*. at 835. Likewise, the township did not raise the issue of the height of the developer's proposed

15

buildings in any of its discussions with the developer on the sketch plan. *Id*. at 835-36. This Court concluded that the board of commissioners did not act in bad faith. *Id*. at 837. Significant to this Court was the fact that the township's representative and the developer conferred on the plan for several months, albeit on the Preservation Overlay District requirements, which this Court determined did not actually apply to the plan. *Id*. at 833, 837. The plan was also forwarded to several township committees for review. *Id*. at 835, n. 11. Additionally, the developer denied the commissioners' request for additional time to review the plan, so the township had to act to avoid deemed approval. *Id*. at 837.

The facts in the case *sub judice* are similar to those of *1050 Ashbourne* and do not approach those of *Honey Brook Estates*, *Highway Materials*, or *Raum*. Cardiff submitted a total of four plans to the Township over an eight-month period. The first three plans were referred to the Planning Commission.[17] Additionally, Gateway, on behalf of the Township, reviewed and provided a total of five memoranda in response to the various plans prior to Cardiff's presentation of its seventy-two townhome Plan at the hearing.[18] This is not a case where the municipality provided the developer with no opportunity to revise defects in the initial plan and did not provide feedback. For example, after reviewing Cardiff's

---

[17] With respect to the first plan, the Township notified Cardiff that the Planning Commission determined that the plan was missing certain studies and reports that were required by the Zoning Ordinance, and that the Planning Commission would review the plan once it was complete. (R.R. vol. I at 334a.) The second and third plans were referred to the Planning Commission. The plans were considered at the Planning Commission's public meetings, which involved residents' concerns and discussions about numerous items in the plans, including the cul-de-sac. (R.R. vol. II at 595a-96a, 826a-27a.) The Planning Commission voted to recommend denial of both the second and third plans. (R.R. vol. II at 596a, 827a.)

[18] Gateway provided Review Memoranda dated September 3, 2014, (R.R. vol. I at 309a-12a), November 26, 2014, (R.R. vol. II at 568a-70a), December 11, 2014, (R.R. vol. IV at 1705a-06a), February 16, 2015, (R.R. vol. IV at 1707a-09a), and April 21, 2015, (R.R. vol. II at 823a-25a).

16

first plan, Gateway advised Cardiff that the plan did not meet the cul-de-sac length requirements. (R.R. vol. I at 311a.) Additionally, under *1050 Ashbourne*, the fact that the Township did not include all of the noted deficiencies in each of the Review Memoranda is not, in itself, demonstrative of bad faith. Moreover, Cardiff kept significantly revising the plan. In sum, the Township provided Cardiff with feedback and with sufficient time and multiple opportunities to correct defects. These actions by the Township are sufficient to meet its duty of good faith. *See Kassouf v. Township of Scott*, 883 A.2d 463, 476 (Pa. 2005) (stating that there is no basis in law to suggest that a developer is entitled to infinite opportunities to address and remedy defects in a subdivision plan).

Additionally, the fact that Gateway issued a Review Memorandum on the fourth Plan *after* the meeting does not demonstrate bad faith. The Board had scheduled the public hearing on the third plan (for seventy-one townhomes) for May 20, 2015. On May 15, 2015, Cardiff submitted its fourth Plan for seventy-two townhomes. Cardiff elected to present this Plan directly to the Board. The fact that Gateway did not issue a review memorandum prior to the meeting does not demonstrate bad faith in light of the limited timeframe. Cardiff's decision to revise the plan and present it at the meeting is similar to the developer's action in *1050 Ashbourne*. Further, and importantly, the defects that we have addressed (street length and cul-de-sac radii) concern real, substantive objections with a basis in the SALDO. These defects are not frivolous defects, such as those that were cited in *Raum*.

Lastly, the Board's failure to grant Cardiff's request to continue the hearing to another date also does not constitute bad faith. A review of the record reveals that Cardiff sought the continuance in order to respond to evidence presented

17

by Objectors. (R.R. at 1413a.) In other words, Cardiff simply wanted more time to rebut the evidence presented. Although the Board denied Cardiff's request, the Board provided Cardiff with the opportunity to present rebuttal testimony. Notably, before having Cardiff present its rebuttal, the Board recessed on Cardiff's application and continued with its agenda. While continuing with its agenda, the Board allowed Cardiff the opportunity to prepare for its rebuttal, apparently providing Cardiff with a conference room for about thirty minutes. (*See* R.R. vol. III at 1415a-17a.) Cardiff was then given a full and fair opportunity to present its rebuttal evidence. (*See* R.R. vol. III at 1417a-65a.) This does not demonstrate a lack of good faith by the Board.

Accordingly, for the foregoing reasons, we affirm the trial court's order.

_____
J. WESLEY OLER, JR., Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardiff Heights, LP,     :
      Appellant  :
          :
    v.      : No. 1370 C.D. 2016
          :
Ross Township Board of   :
Commissioners and Bradford  :
Estates Homeowners Association, :
Irving Portnoy, Joanne Portnoy, :
David Williamson, Michael Scotto :
and Frank P. Cuda, Vincent D.  :
Rizzo, IV, and Vance Rizzo  :

Cardiff Heights, L.P.    :
          :
    v.      : No. 47 C.D. 2017
          :
Ross Township Board of   :
Commissioners and Bradford Estates :
Homeowners Association Irving  :
Portnoy, Joanne Portnoy, David :
Williamson, Michael Scotto and :
Frank P. Cuda, Vincent D. Rizzo, IV, :
and Vance Rizzo    :
          :
Appeal of: Frank P. Cuda, Vincent D. :
Rizzo, IV, and Vance Rizzo  :

# O R D E R

AND NOW, this 27th day of December, 2017, the order of the Court of Common Pleas of Allegheny County, dated July 18, 2016, is hereby affirmed.

_____
J. WESLEY OLER, JR., Senior Judge